MANUEL TERCEIRO ESMORIS, Plaintiff and Appellant, v. HOMESTEAD DIVISION, ETC., Defendant and Appellee.

No. 7500. Argued February 23, 1938.—Decided July 23, 1938.

*Oscar Souffront* for appellant. *B. Fernández García, Attorney General,* and *Harry B. Llenza, Law Clerk,* Homestead Division, for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

In this case the action brought is for the specific performance of a contract entered into with the defendant public officers and for the recovery of damages.

As a first cause of action, the plaintiff alleges that he is the owner of a property of 300 acres *(cuerdas)*; that on June 16, 1932, the former Homestead Commission offered to purchase from him the said property for $13,500, which offer was accepted by the plaintiff on July 9 of the same year, the contract of sale having thus become perfected; that before the plaintiff accepted the offer or purchase of the Homestead Commission, it was agreed between the parties that the price would be computed on the basis of $45 per acre

.(cuerda); that at the request of the attorney for the commission, the plaintiff forwarded to the said commission all the titles and documents required for the execution of the deed of sale; that, in pursuance of the agreement, the plaintiff refrained from doing any work of preservation or cultivation on the property, with the result that the yield of the coffee crops for the years 1932, 1933, and 1934 was less by fifty per cent than the normal production of the property; and that the plaintiff has been always willing to fulfill the contract, but not so the defendant which has refused to fulfill it.

In the second cause of action it is alleged that as the result of the nonperformance on the part of the defendant the plaintiff has suffered damages amounting to $8,000.

The prayer of the complaint is that the defendant officers be adjudged to specifically perform the alleged contract of sale and to pay to the plaintiff the sum of $13,500 as the purchase price, with interest thereon from the filing of the complaint, and the further sum of $8,000 as damages, together with costs, all of which to be charged against the funds of the Homestead Commission. No relief is sought against any of the defendants in their private capacity.

The defendants answered and alleged that the negotiations for the purchase of the plaintiff's property were made subject to the power conferred upon the Treasurer of Puerto Rico to issue bonds in the sum of $500,000, the proceeds of which were to be applied to the purchase of land for the establishment of farms, "and upon the specific and express condition that the said bonds should be issued and the proceeds thereof be placed at the disposal of the Homestead Commission for such purposes"; that the negotiations between the plaintiff and the commission were discontinued pursuant to an administrative order of the Governor of Puerto Rico of July 8, 1932; that the commission never forbade the plaintiff to do any preservation or cultivation work on the property; and that if the plaintiff refrained from thus

working on the property he did so on his own initiative and responsibility, because ever since July, 1932, he was aware of the order of the 8th of said month which put an end to the negotiations for the purchase of the property and pursuant to which the Treasurer of Puerto Rico stopped the issuance of the bonds that was to produce the necessary funds for the purchase of farm lands; that in consequence of the attitude of the Treasurer of Puerto Rico, the Homestead Commission and the defendants herein have no funds with which to buy the plaintiff's property; and they denied that the plaintiff had suffered any damage. As special and separate defenses they alleged the following:

A. The facts alleged in the complaint are insufficient to constitute a cause of action.

B. Nonjoinder of parties defendant because of the failure to make the People of Puerto Rico a defendant in the action; that The People is the real party in interest and its consent to be sued has not been given.

C. Impossibility of specifically performing the contract, if any, as the Homestead Division lacked the necessary funds for the purchase of plaintiff's property.

D. That the action is barred in accordance with the provisions of section 9 of Act No. 76 of April 13, 1916, as amended by Act No. 11 of April 18, 1928, as the same was brought more than two years after July 9, 1932, on which date, as claimed by the plaintiff, the alleged contract was perfected.

E. That the plaintiff is barred from claiming the damages which he alleges to have suffered, in accordance with the provisions of subdivision (b) of section 1 of Act No. 76 of April 13, 1916, as amended by Act No. 11 of April 18, 1928, which prescribes that no recovery shall be had on account of damages if occasioned by The People of Puerto Rico prior to the date on which the action is brought.

The District Court of San Juan rendered judgment for the defendant and imposed costs on the plaintiff, who feeling aggrieved by that judgment, appealed therefrom.

██ Practically all of the six assignments of error set up by the appellant in his brief refer to the only substantial question involved in this case, which can be stated thus:

Did the lower court err in disclaiming jurisdiction because an action against the People of Puerto Rico was involved and the latter had not given its consent to be sued?

Before considering and deciding the above question, the preliminary question of whether the People of Puerto Rico was a necessary party to the action herein must be disposed of. The appellant directed his action against the Homestead Division of the Department of Labor of Puerto Rico, represented by the Commissioner of Labor, the Commissioner of Health, and the Commissioner of the Interior, and contends that the People of Puerto Rico is not a necessary party to the action. The People of Puerto Rico has not been summoned, nor has it voluntarily appeared as a party to the action, nor has it at any time been under the jurisdiction of the trial court. Making the commissioners, connected with the Homestead Division, parties defendant does not make the People of Puerto Rico a party defendant. The People must be mentioned in the complaint and summoned as provided for in section 93 of the Code of Civil Procedure (1933 ed.). It has been so held by the Supreme Court of the United States in *Davis* v. *Gray,* 16 Wall. 203, 220, where the Court said:

"Where the State is concerned, the State should be made a party, if it could be done. That it can not be done is a sufficient reason for the omission to do it, and the court may proceed to decree against the officers of the State in all respects as if the State were a party to the record.

"In deciding who are parties to the suit the court will not look beyond the record. *Making a State officer a party does not make the State a party, although her law may have prompted his action, and the State may stand behind him as the real party in interest.* A State can be made a party only by shaping the bill expressly with that view, as where individuals or corporations are intended to be put in that relation to the case." (Italics ours.)

In support of his contention that actions for the specific performance of a contract and for damages on account of nonperformance may be brought against the officers who represented the State in making such contract, irrespective

of any interest of the State therein, the appellant has cited several decisions of the Supreme Court of the United States, which we think are not applicable to the case at bar.

The first case in which this question was discussed was that of *U. S. v. Peters,* 5 Cranch 115, 138, 139, where recovery was sought of the proceeds of the sale of a ship in the hands of the Treasurer of the State of Pennsylvania. The lower court had held that the plaintiff was entitled to the funds but refused to issue a writ of execution against the Treasurer on the ground that the latter had the funds in his hands as the property of the State, and as the State could not be submitted to judicial process the officer who kept the funds as the representative of the State could not be submitted either. The Supreme Court issued a writ of mandamus to compel the lower court to execute its judgment, and speaking through Chief Justice Marshall said:

" . . . . The state can not be made a defendant to a suit brought by an individual; but it remains the duty of the courts of the United States to decide all cases brought before them by citizens of one state against citizens of a different state, where a state is not necessarily a defendant. In this case, the suit was not instituted against the state, or its treasurer, but against the executrices of David Rittenhouse, for the proceeds of a vessel condemned in the court of admiralty, which were admitted to be in their possession. If these proceeds had been the actual property of Pennsylvania, however wrongfully acquired, the disclosure of that fact would have presented a case on which it is unnecessary to give an opinion; *but it certainly can never be alleged, that a mere suggestion of title in a state, to property in possession of an individual, must arrest the proceedings of the court, and prevent their looking into the situation, and examining the validity of the title.*" (Italics ours.)

In *Meigs v. McClung,* 9 Cranch (U.S.) 11; 3 L. ed. 639, it was sought to recover land on which the United States had erected works at a cost of $30,000. The defendants were military officers in possession of the land who alleged that the action could not be sustained against them because the land was occupied by a garrison of the United States, and

by the defendants as officers of the United States, for the benefit of the United States, and by their direction. The lower court overruled the defendants' objections and held that, as the title was in the plaintiff, the latter could recover the property, and that "if it was private property, the United States could not deprive the individual of it, without making him just compensation therefor. The Supreme Court affirmed the judgment, saying:

"This court is unanimously and clearly of opinion, that the circuit court committed no error in instructing the jury, that the Indian title was extinguished to the land in controversy, and that the plaintiff below might sustain his action."

In *Osborn* v. *United States Bank,* 9 Wheat. 738, 842, 844, 846, considered as the leading case on the subject, the State of Ohio levied a tax upon a branch of the bank located within the State. The bank refused to pay the same, and Osborn, the State auditor, seized $100,000 which he handed to the State Treasurer upon learning that the court had issued an injunction to prevent the collection of such a tax. The bank brought its suit against the Auditor and the Treasurer. The latter alleged that the State of Ohio was the real party in interest; that they were officers of the State, and had acted in their official capacity and in obedience to the laws of the State and that the latter was a necessary party for the relief sought, viz., the return of the money. In deciding the case in favor of the plaintiff bank, the Supreme Court, through Chief Justice Marshall, expressed itself as follows:

"If the state of Ohio could have been made a party defendant, it can scarcely be denied, that this would be a strong case for an injunction. The objection is, that, as the real party cannot be brought before the court, a suit cannot be sustained against the agents of that party; and cases have been cited, to show that a court of chancery will not make a decree, unless all those who are substantially interested, be made parties to the suit. This is certainly true, where it is in the power of the plaintiff to make them parties; but if the person who is the real principal, the person who is the true source *of the mischief,* by whose power and for whose advantage it is

done, be himself above the law, be exempt from all judicial process, it would be subversive of the best established principles, to say, that the law could not afford the same remedies *against the agent employed in doing the wrong,* which they would afford against him, could his principal be joined in the suit. . . .

" . . . . The process, therefore, is substantially, though not in form, against the state, . . . . The direct interest of the state in the suit, as brought, is admitted; and, had it been in the power of the bank to make it a party, perhaps, no decree ought to have been pronounced in the cause, until the state was before the court. But this was not in the power of the bank . . . . ; and the very difficult question is to be decided, whether, in such a case, the court may act upon the agents employed by the state, and on the property in their hands." (Italics ours.)

In *United States* v. *Lee,* 106 U. S. 196, 216, a suit was brought to recover the land dedicated to the Arlington National Cemetery. The suit was instituted against the officers of the Federal Government who were in possession of the land, without making the United States a party defendant. The Supreme Court, after a review of all the former decisions, said:

"This examination of the cases in this court establishes clearly this result: that the proposition that when an individual is sued in regard to property which he holds as officer or agent of the United States, his possession cannot be disturbed when that fact is brought to the attention of the court, has been overruled and denied in every case where it has been necessary to decide it, . . . . "

Our examination of the cases cited by the appellant shows that all of them involved the recovery of properties of which the plaintiffs had been unlawfully deprived by public officers who, on being sued, alleged that they had acted as the agents of the State and that the action should have been prosecuted against the latter. The *ratio decidendi* of the cases examined by us is that where the State is a necessary party in an action for the recovery of property unlawfully held in its behalf and under its authority and its consent to be sued is not given, the action may be brought against the officers

who are in actual possession of the property, on the ground that the said officers are *joint tort feasors,* transgressors, jointly with the State, of the rights of the owner of the property sought to be revendicated.

The case at bar does not involve the recovery of property but the specific performance of a contract entered into between the plaintiff and public officers, who acted in their official capacity as the agents of the State and in its name and for its benefit. The two actions herein prosecuted are by their nature actions *ex contractu.* Such actions can only be brought against the State as the other contracting party and not against the officers who represented the State in the making of the contract or who refused to perform the agreement.

. In *Cunningham* v. *Macon & Brunswick R. R. Co.,* 109 U.S. 446, 27 L. Ed. 992, it was held that whenever it clearly appears from the record that the State is an indispensable party to enable the court to grant the relief sought, it will refuse to take jurisdiction. The inference is that whenever it appears on the face of the record that the defendants are not individually interested in the issue, and that the relief sought against them is only in their official capacity, as the agents of the State which will be the only party to be affected by the judgment, the question then arising as to whether the action is not substantially an action against the State is a jurisdictional question. See *Ex parte Madrazzo,* 7 Pet. (U.S.) 627; *Kentucky* v. *Dennison,* 65 U.S. 66; and *New Hampshire* v. *Louisiana,* 108 U.S. 76.

In *Hagood* v. *Southern,* 117 U.S. 52, 67, the State of South Carolina, the real party in interest, was not joined as defendant. The action was prosecuted against the Treasurer, the Auditor, and other public officers. In deciding that the action could not prosper, the Federal Supreme Court said:

"These suits are accurately described as bills for the specific performance of a contract between the complainants and the State of South Carolina, who are the only parties to it. But to these bills

the State is not in name made a party defendant, . . . . ; and, except with its consent, it could not be brought before the court and be made to appear and defend. And yet it is the actual party to the alleged contract the performance of which is decreed, the one required to perform the decree, and the only party by whom it can be performed. Though not nominally a party to the record, it is the real and the only party in interest, the nominal defendants being the officers and agents of the State, having no personal interest in the subject-matter of the suit, and defending only as representing the State. The State is not only the real party to the controversy, but the real party against which relief is sought by the suit, and the suit is, therefore, substantially within the prohibition of the XIth amendment to the Constitution of the United States, . . . . ''

The following is transcribed from the decision in *In re Ayers,* 123 U.S. 443, 503; 31 L. ed. 216.

''It may be asked what is the true ground of distinction, so far as the protection of the Constitution of the United States is invoked, between the contract rights of the complainant in such a suit, and other rights of person and of property. In these latter cases it is said that jurisdiction may be exercised against individual defendants, notwithstanding the official character of their acts, while in cases of the former description the jurisdiction is denied.

''The distinction, however, is obvious. The acts alleged in the bill as threatened by the defendants, the present petitioners, are violations of the assumed contract between the State of Virginia and the complainants, only as they are considered to be the acts of the State of Virginia. The defendants, as individuals, not being parties to that contract, are not capable in law of committing a breach of it. There is no remedy for a breach of a contract . . . ., except upon the contract itself, and between those who are by law parties to it. . . . But where the contract is between the individual and the State, no action will lie against the State, and any action founded upon it against defendants who are officers of the State, the object of which is to enforce its specific performance by compelling those things to be done by the defendants which, when done, would constitute a performance by the State, or to forbid the doing of those things which, if done, would be merely breaches of the contract by the State, is in substance a suit against the State itself, and equally within the prohibition of the Constitution.'' See *Louisiana* v. *Jumel,* 107 U. S. 711; 27 L. ed. 448, 468, and *Pennoyer* v. *McConnaughy,* 140 U. S. 1, 35 L. ed. 363.

According to the jurisprudence cited, both the action to enforce the specific performance of the contract and that for damages by reason of its nonperformance are actions *ex contractu* which should be prosecuted against the other contracting party, the People of Puerto Rico. If the three defendant commissioners who are sued herein in their official capacity, are not parties to the contract and have acted solely as the agents or representatives of the State, the complaint then fails to state facts sufficient to constitute a cause of action against any of the three commissioners individually or against the three of them jointly as members of the Homestead Division of the Department of Labor of Puerto Rico.

The appellant urges that the Homestead Division has been constituted by law into a corporation or quasi corporation, and hence can not evade its responsibility for the specific performance of its contracts or its liability for any damage resulting from the nonperformance thereof. Therefore, let us see whether the Homestead Division of the Department of Labor has been clothed by the Legislative Assembly of Puerto Rico with such powers and faculties as in law would have the legal effect of converting it into a corporation or quasi corporation.

In *Gross* v. *Kentucky Board of Managers,* 49 S.W. 458, 459, cited by the appellant, the State of Kentucky approved an Act for a display by said State of its products in the Chicago Exposition and appropriated the sum of $100,000 to defray the expenses of the exhibition. A commission designated as The Kentucky Board of Managers was created to carry out the work contemplated by the act, with power to appoint agents and employees. The commission, although not empowered to do so, withdrew at once the whole amount appropriated. The Legislature, then, passed a resolution declaring to the public that the State would not assume the payment of any obligation remaining unpaid after the expenditure of the sum already appropriated. Plaintiff Gross sued the board to recover damages for the nonperformance of its

contract. The board demurred to the complaint and alleged that the commission was merely an agent of the State and could not be sued. In reversing the judgment sustaining said demurrer, the Supreme Court of Kentucky said:

"The rule is well settled that the state cannot be sued, and that the same protection is extended to the officers of the state. But this rule does not apply to a corporation created by the state for certain public purposes. . . . So the question is presented whether appellee was invested by the legislature with the character of a corporation or quasi corporation. It is not necessary that the thing created by the legislature should be named by it a corporation. Its character depends upon the powers given it, and not upon the name by which the legislature may call it. . . In the case at bar the legislature, by the joint resolution above referred to, expressly declared that the state would not assume any debts of the board. If the state was not the debtor, it must have been contemplated that there was some entity on whom the obligation of these contracts would rest. . . . But it cannot be presumed that it was contemplated that people who dealt with this board should have no one to look to for the enforcement of their just claims. The board was authorized to have a house built, and a restaurant run in it, to employ agents and assistants, and to take all necessary steps to have the state properly represented at that exposition. The commissioners clearly were not personally responsible for their obligations, the state expressly declared that it was not to be responsible, and the only reasonable conclusion is that the board of managers, to whom the $100,000 was committed to carry out the objects of the act, was intended to be, to the extent of the funds put in its hands, at least a quasi corporation; and, as the power to make contracts is expressly conferred, the power to sue or be sued on these contracts was necessarily vested on the board, for the contracts were the obligations of the board, and not the obligations of the state. . . . It was an agency of the state, but it was also vested with corporate powers, and in its corporate capacity it may be sued for its corporate acts, just as any other corporation. . . . The board was not created to discharge any governmental function. The erection of a headquarters building and the running of a restaurant were matters of business, in which this board stood on the same plane as others engaged in like undertakings. In sending it to a distant state to carry on business, and

absolving the state from all liability, the legislature must be presumed to intend that the funds in its hands should be subject to its obligations.''

We will now examine the laws creating the Homestead Commission and the Homestead Division of the Department of Labor of Puerto Rico, in order to be able to determine whether the legal effect of its provisions was to create a corporation or quasi corporation, with power to sue or be sued for the specific performance of its obligations.

Section 1 of Act No. 53 of July 11, 1921, (Session Laws, p. 386), as amended by Act No. 60 of 1928, empowered the Commissioner of the Interior *to acquire by purchase, with funds of the Homestead Commission,* such lands as might be selected by him as being suitable for the formation of farms and such lands as might be selected by him and by the Commissioner of Health as suitable for the creation of workmen's settlements. Section 2 provided that the Homestead Commission should consist of the Commissioner of the Interior, as Chairman *ex officio,* the Treasurer, the Commissioner of Health, the Commissioner of Agriculture and Labor, and three persons to be designated by the *Governor;* and that the said commission would be empowered *to issue rules and regulations for leasing, managing and selling such houses as shall be built.* It is provided by section 3 of said act that all moneys from bond issues authorized by law, rentals or other income from the said houses *shall be managed by The People of Puerto Rico and shall constitute a special fund in the Treasury of Puerto Rico.* These funds were appropriated *for expenditure by the Commissioner of the Interior with the approval of the Homestead Commission* for the payment of expenses incurred in the construction of houses, *purchase of lands,* and other disbursements required for the construction of a workmen's settlement, or for the sale of farms. The commission was authorized to apportion the funds thus appropriated in accordance with the needs of each town or zone, and to fix the rental and the price at which the

lots and houses leased might be sold (section 4). Section 6 authorized the Commissioner of the Interior, *in accord with the Homestead Commission,* to lease and sell farms and lots to workmen. It also authorized the Commissioner of the Interior *to change or exchange lands of the People of Puerto Rico for any other lands suitable for the construction of workmen's settlements or for the creation of farms, and to sell public lands and with the proceeds of such sale to acquire other lands more suitable for the above purposes,* and it provided "and, for such purpose, the Commissioner of the Interior is hereby authorized to make such sales, purchases, changes or exchanges as in his judgment are convenient and necessary, under condition that the lands so acquired shall be applied exclusively to carrying out the purposes of this Act." Section 7 authorized *the Commissioner of the Interior and the Homestead Commission* to fix the area of the lots to be leased, with the right of ownership, for dwelling and farming purposes. Sections from 8 to 17, inclusive, refer exclusively to the procedure to be followed by the Commissioner of the Interior and the Homestead Commission in the lease and sale of lots and farms, transfer and cancellation of contracts, reversion of the land to the People of Puerto Rico for default in the payments, etc. Other provisions of the said act are not relevant to the issue involved in the instant case.

On December 14, 1931, there was approved the act of the Legislature of Puerto Rico, Act No. 4 of 1931 (Special Session Laws, p. 146), whereby the Treasurer of Puerto Rico was authorized to issue bonds to the People of Puerto Rico up to the sum of $500,000, and it was provided that the proceeds thereof shall "be expended by the Homestead Commission in the acquisition of lands to be devoted to agricultural farms under the provisions of the Homestead Law." The good faith of the People of Puerto Rico was thereby pledged for the payment of the principal and interest on said bonds. Upon their issuance such bonds constituted a legal

and binding obligation of the People of Puerto Rico until redeemed. Section 6 of the act provided that "the proceeds of the sale of the bonds shall be deposited with an authorized depositary of the Government of Puerto Rico, subject to such conditions as may be prescribed by the Governor of Puerto Rico."

On May 15, 1933, the Legislature of Puerto Rico passed Joint Resolution No. 47, in whose preamble it was set forth that it was desirable from the standpoint of economy as well as from that of good administration that some of the Boards and Commissions of the Insular Government be abolished and their functions transferred to the department to which they were related by the nature of their work; *and the work of promotion to a higher social and human standard realized by the Homestead Commission should be continued by the Government of Puerto Rico.* In accordance with that preamble it was resolved as follows:

1. To create the Homestead Division in the Department of Labor to be vested with the exercise of all the faculties, powers, and duties conferred on the Homestead Commission by Act No. 53, *supra,* the said commission being abolished.

2. To authorize the Commissioner of Labor, the Commissioner of the Interior, and the Commissioner of Health to acquire by purchase with funds of the Homestead Commission land suitable for farms and workmen's settlements.

3. To transfer to the Division thus created all the funds, personnel, documents, files, organizations and administrative dependencies that belonged to the Homestead Commission.

4. To dissolve the Homestead Commission.

It is our opinion that the intention of the Legislature in passing Act No. 53, *supra,* was to organize the Homestead Commission as a governmental agency or advisory body for the execution and development of a plan having for its object the creation of agricultural farms and workmen's settlements. The power to select and acquire by purchase land suitable for such farms and settlements and to change or exchange public land for other land suitable for the purposes

contemplated by the act was conferred on the Commissioner of the Interior and not on the Homestead Commission. The funds appropriated for carrying out the purposes of the act were administered by the People of Puerto Rico and placed in the custody of the Insular Treasurer, as a special fund. The power to invest such funds was vested in the Commissioner of the Interior; and the only power conferred on the commission was that of approving or disapproving the investments proposed by the Commissioner. The Homestead Commission lacked the freedom of action and the degree of power necessary to justify us in holding that, although it was not expressly designated as a ''corporation,'' it was invested with the inherent attributes of a corporate entity.

If we were to admit that the Homestead Commission was invested, by Act No. 53, with the powers of a corporation, such an admission would not aid the appellant in any way. At the time of the filing of the complaint, the said commission no longer existed and its functions had been transferred to a Division of the Department of Labor, which is one of the executive departments of the Insular Government and an agency of the People of Puerto Rico. The intention of the lawmaker was clearly expressed when saying, ''this work of promotion to a higher social and human standard should be continued by the Government of Puerto Rico,'' and when providing, in the organic law of the Department of Labor, that all the personnel, organizations, and administrative dependencies of the Homestead Commission should be transferred to that Department, and perform the duties discharged by said commission.

The Homestead Division of the Department of Labor as well as each one of the executive officers made defendants herein are merely agents of the People of Puerto Rico, who act in its behalf and for its benefit and under its authority in the exercise of functions that are purely governmental, and not for the purpose of running a business as in the case of *Gross* v. *Kentucky Board of Managers, supra.*

586

We agree with the lower court that the actions prosecuted in the instant case should have been instituted against the People of Puerto Rico and not against its agents. As the People of Puerto Rico has not been summoned, we think it unnecessary to consider the question of whether or not it has given its consent to be sued for damages for the nonperformance of the contracts entered into by its agents.

The judgment appealed from must be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.