CASE 112—ACTION FOR DAMAGES—FEB. 8.

# Gross v. Kentucky Board of Managers of the World's Columbian Exposition, Etc.

APPEAL FROM CHANCERY DIVISION OF JEFFERSON CIRCUIT COURT.

(This case was originally marked "Not to be Reported," and is now included in the official reports by order of the Court.)

PUBLIC QUASI-CORPORATIONS—LIABILITY TO SUIT.—Under the act of January 19, 1893, entitled "An act to provide for the collection and exhibition of the resources and evidences of progress of the State of Kentucky at the World's Columbian Exposition of 1893," the Kentucky Board of Managers of the World's Columbian Exposition constitutes a public corporation and as such is liable to an action for damages for a breach of a contract entered into by it pursuant to the powers conferred by the act.

B. F. BUCKNER, FOR APPELLANT.

1. The appellee is a corporation created by law and has all the attributes of a corporate body. Kreiger v. Shelby Railroad Co., 84 Ky., 78; Hancock v. The Louisville Railroad Co., 145 U. S., 415.

2. The objection that this action is one virtually against the State can not be sustained. The Auditor v. Adams, 13 B. M., 150; Garrard v. Nuttall, 2 Met., 106; Haly v. Auditor, 4 Bush, 490; Trustees of the High School v. Auditor, 80 Ky., 337; Perkins v. Auditor, 79 Ky., 306; Lindsey v. Auditor, 3 Bush, 232; Auditor v. Cochran, 9 Bush, 7; United States v. Lee, 106 U. S., 196.

SIMRALL, BODLEY & DOOLAN for appellees. (DULANEY & ALEXANDER and BERNARD 'FLEXNER, of counsel.)

1. It is an elementary proposition which has been more than once recognized in this court that "the State can not be sued without its express consent." Williamson v. Louisville Industrial School of Reform, 15 Ky. Law Rep., 629; Herr v. Central Ky. Lun. Asy., 17 Ky. Law Rep., 320.

2. The World's Commissioners are merely the agents of the State. Norman v. Kentucky Board of Managers, &c., 93 Ky., 543; Tate v. Salmon, 79 Ky., 543; Taylor v. Hall, 9 S. W., 148; *In re* Ayers, 123 U. S., 501-2; Daggatt v. Colgan, 92 Cal., 56; People v. Swinford, 43 N. W. R., 929; Board of Public Works v. Gantt, 76 Va., 470; People v. Canal Board, 13 Barb., 439; Lowry v. Thompson, 25 S. C., 423; Bank of Washington v. State of Arkansas, 20 How., ——; Cunningham v. Mason, &c., R. R. Co., 109 U. S., 446; People v. Dulaney, 96 Ill., 512; Poindexter v. Greenhow, 114 U. S., 270; North Carolina v. Temple, 134 Id., 22; Pennoyer v. McConnaughy, 140 Id., 1; Lord v. State Board, 111 N. C., 135; Reagan v. Farmers Loan Co., 154 U. S., 388; 31 Central Law Journal, 264; Downing v. Mason County, 87 Ky., 208; St. Paul v. Brown, 24 Minn., 517; Vine v. Harvey, 7 T. B. M., 440; Rodman v. Musselman, 12 Bush, 354; 8 Bush, 336; 54 Ala., 67; 7 Coldwell (Tenn.), 306; 4 How., (Miss.), 170; 52 Miss., 732; 117 U. S., 53; 23 Am. & Eng. Ency. of Law, 93.

BERNARD FLEXNER, BODLEY, BASKIN & MORANCY, for the appellees in a petition for a rehearing. (SIMRALL & DOOLAN, and DULANEY & ALEXANDER of counsel.)

Additional citations: Mason v. Rogers, 4 Litt., 377; Phillips v. Pope's Heirs, 10 B. M., 173; Irish Bldg. & Loan v. Clemons, 78 Ky., 82; Heneyck v. Canal Co., 3 Harrison, N. J., 200; Wheatley v. Mercer, 9 Bush, 707; Christian County Court v. Rankin, 2 Duv., 502; Lawrence v. Chattaroi R. R. Co., 81 Ky., 225.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

By an act approved January 19, 1893, entitled "An act to provide for the collection and exhibition of the resources and evidences of progress of the State of Kentucky at the World's Columbian Exposition of 1893" (see Acts 1891-93, p. 433), the sum of $100,000, or so much of it as might be necessary, was appropriated, out of any money in the treasury not otherwise ap-. propriated,, for providing a suitable display of the State's progress, etc., at this exposition. To carry out the work contemplated by the act, a board was created, to be known as "The Kentucky Board of Managers of the World's Columbian Exposition," to consist of five members, appointed by the Governor. Each of the board was required to give bond, and enter at once upon the discharge of his duties. One of the board was to be elected a president; another a secretary; and when the board was not in session the president might administer its affairs, subject to its approval. The board was given power to employ necessary agents and employes. It was required to have a suitable building erected for the Kentucky headquarters, and this building, it was provided, "should contain the necessary restaurant and refreshment accommodations, the same to be let to the highest and best bidder, and the proceeds covered into the treasury of the Kentucky board of managers." The act did not contemplate the withdrawal of the $100,000 by the board from the treasury, except as it was needed to cover its expenditures, but it at once drew out the whole sum. After this had been done, the General Assembly, by a joint resolution, after reciting the fact that the total amount of the appropriation had been unnecessarily drawn, a considerable part of it remaining unex-

pended, declared "that the public and all persons inter-
ested may have full knowledge in the premises, that the
State will not assume the payment or pay any expenses,
charges, arrears, or indebtedness, if any, whatsoever that
may remain unpaid after the expenditure of the appropria-
tion heretofore made." See Acts 1891-93, p. 1568.

The board, in order to provide the necessary restaurant
and refreshment accommodations, contracted with appellant
to carry on the restaurant at the headquarters building,
he agreeing to pay it ten per cent. of the gross receipts.
On November 7, 1893, appellant filed this suit against the
board, praying judgment against it for $5,000 for failing
to comply with the contract it made with him, in various
particulars set out in his petition. The board filed a de-
murrer to the petition, which the court below sustained,
on the ground that it was only the agent of the State of
Kentucky, and so could not be sued. This is the only
question raised on this appeal.

The rule is well settled that the State can not be sued,
and that the same protection is extended to the officers of
the State. But this rule does not apply to a corporation
created by the State for certain public purposes. If ap-
pellee was made by the acts referred to a corporation or
a quasi corporation, we see no reason why it should be
exempted from the rule allowing suits to be brought
against corporations on contracts they have made. So the
question is presented whether appellee was invested by
the Legislature with the character of a corporation or
quasi corporation. It is not necessary that the thing
created by the Legislature should be named by it a corpo-
ration. Its character depends upon the powers given it,
and not upon the name by which the Legislature may call
it.

Following a decision of this court, the Supreme Court of the United States, in Hancock v. The Louisville & Nashville Railroad Co., 145 U. S., 415, [12 Sup. Ct., 969], said: "By the act of 1869 this prescribed portion of Shelby county was authorized to issue bonds and subscribe stock. The bonds, when issued, were not the obligations of Shelby county, nor of the individual taxpayers, and still there must be some debtor. That debtor was this portion of Shelby county. Giving to it power to issue bonds and create indebtedness is the creation of an entity with power to act, and, if this entity has power to create a debt, it becomes subject to suit. That this entity was not in terms named a corporation is not decisive. It is enough that an artificial entity was created, with power to exercise the functions of a corporation. It was, though not named, a corporate entity."

In the case at bar the Legislature, by the joint resolution above referred to, expressly declared that the State would not assume any debts of the board. If the State was not the debtor, it must have been contemplated that there was some entity on whom the obligation of these contracts would rest. It is true that the State can not be sued for a debt, but the Legislature may be petitioned to make an appropriation for the payment of the claim. The object of this joint resolution was to have it understood that the State was to be in no way responsible for the obligations of this board, and to forestall all claims, "whether legally enforceable, or merely obligatory in good morals and on the public faith," as stated in the resolution, and to cut off all applications for their payment by the Legislature. But it can not be presumed that it was contemplated that people who dealt with this board should

have no one to look to for the enforcement of their just claims.

The board was authorized to have a house built, and a restaurant run in it, to employ agents and assistants, and to take all necessary steps to have the State properly represented at that exposition. The commissioners clearly were not personally responsible for their obligations, the State expressly declared that it was not to be responsible, and the only reasonable conclusion is that the board of managers, to whom the $100,000 was committed to carry out the object of the act, was intended to be, to the extent of the funds put in its hands, at least a *quasi* corporation; and, as the power to make contracts is expressly conferred, the power to sue or be sued on these contracts was necessarily vested in the board, for the contracts were the obligations of the board, and not the obligations of the State.

It is true that this board has been called, in an opinion by this court, an "agency of the State." It was an agency of the State, but it was also vested with corporate powers, and in its corporate capacity it may be sued for its corporate acts, just as any other corporation.

It appears from the petition that a large part of the $100,000 is unexpended, besides the proceeds of the restaurant received from appellant; and there is no reason why this money should not make good to appellant any loss that the board may have inflicted upon him by the breach of contract alleged in the petition.

The board was not created to discharge any governmental function. The erection of a headquarters building and the running of a restaurant were matters of business, in which this board stood on the same plane as others engaged in like under-

takings. In sending it to a distant State to carry on busi-
ness, and absolving the State from all liability, the Legis-
lature must be presumed to intend that the funds in its
hands should be subject to its obligations.

In this respect the case at bar is totally different from
Williamson v. Louisville Industrial School of Re-
form, 95 Ky., 251, [44 Am. St., R., 243; 24 S.
W., 1065]. There the State had established a char-
ity, and the question was whether the fund on which
it depended could be used to make good a tort of an at-
tendant, and the charity in this way impaired or destroyed.
The decision is rested on the ground that the trust fund
could not be diverted from the use to which the Legisla-
ture had devoted it. But here the trust has been per-
formed, and a surplus left. The fund was devoted by the
Legislature to the carrying out of this business, and there
will be no diversion of it, if applied to the payment of the
claims arising out of the business which are justly due.

We have examined the World's Fair cases in other
States cited by counsel. The point raised here was not
involved in these or the other cases relied on for appellee.

The judgment of the court below is therefore reversed,
with directions to overrule the demurrer, and for further
proceedings consistent with this opinion. (See Sinking
Fund Commissioners v. Northern Bank of Ky., 1 Met., 174).

JUDGES GUFFY AND PAYNTER dissent.

DISSENTING OPINION BY JUDGE PAYNTER.

The court recognizes as elementary the principle that a
State can be sued only when she has expressly given her
consent. Notwithstanding the recognition of that princi-
ple, the court distinctly and manifestly disregards it. The
fundamental error consists in assuming that, as the board

of managers could make a contract with reference to the business which the act commissioned it to transact, therefore it was intended that the board, and not the State, should be bound thereby.   Because the law authorizes the agents or officers of a State to make contracts for her, it does not follow that an action can be maintained against a State thereon.   It is equally as erroneous to assume that, because the State can not be sued, therefore her agents can be on her contracts.   If the test of a right to sue a State was to be determined by the fact that her agents had made a contract authorized by law, then she could be sued on her contract thus made, as an individual can be on his obligations.   To show that the court proceeded upon an erroneous hypothesis, and that its reasoning is not sound, it is but necessary to quote its language, which is as follows:

"As the power to make contracts is expressly conferred, the power to sue or be sued on these contracts was necessarily vested in the board; for the contracts were the obligations of the board, and not the obligations of the State."   The exhibit which the board was required to make under the act was for the State of Kentucky.   The money with which the expenses of the exhibit and commission were to be paid belonged to the State, and the commissioners appointed to carry out the wishes of the State were officers and agents, and were required to give bond to the State for the faithful discharge of their duties.   They were required to make reports to the Governor of the State for his examination and supervision.   In fact, everything they were required to do under the act was for the State, and every dollar which they were authorized to expend belonged to the State.

There was nothing in the duties of the board which indi-

cated that it was incorporated, or that it was to transact the business as an incorporated company. The members of the commission were simply the agents of the State, and carried on the business in the name designated by the act which made the appropriation. The act provides that "any excess of the State appropriation and the proceeds of the sales of such building materials, or any other property that may be proper to sell, shall be covered into the treasury and be held and treated as part of the general fund of the State."

This language shows that the commissioners were not to have a cent's interest in the fund which was appropriated, except their salaries and expenses, or that part which might remain after the World's Fair was over. The board was not to withdraw from the treasury any of it, except upon warrants drawn by the Auditor of Public Accounts on the State Treasurer, but in some way it got possession of the entire fund. Then it was that the Legislature made the declaration that it would not be bound beyond the amount appropriated. If the General Assembly had declared in the act that it was to be bound for all contracts which the commissioners made, that would not have given a right to one who entered into a contract with the commission to sue the State thereon, as the consent to be sued was not given. If the resolution to which the court called attention is to be given any significance in this case, it certainly has exactly the opposite meaning to the one given it by the court, as the inference to be drawn is that she was to be bound by contracts to the extent of the amount of the appropriation, to-wit., $100,000, but not beyond that amount. This would mean, if anything, that these were the State's, not the commissioners,' contracts, to that extent. There is

nothing in the language of the resolution which indicates that the Legislature did or intended to relinquish its right to the fund. The resolution does not in the slightest degree tend to support the conclusion reached by the court.

In Norman, Auditor v. The Kentucky Board of Managers, 93 Ky., 543, [20 S. W., 902], in speaking of the relation which the commissioners sustained to the State, the court said, "The commissioners selected to expend the money are merely the State's agents to do so, and provide the exhibit for the benefit of its people."

It necessarily follows that the contracts which the commissioners were authorized to enter into obligated the State, and not the board. If they were a corporation under the name of the board of managers, etc., it was none the less an agency of the State, without right to sue or be sued. There was no such right conferred by the act. There is no language employed in the act, and nothing in the nature of its duties, which indicates that the Legislature intended to create the board a corporation.

In the case of Hancock v. Louisville & Nashville Railroad Co., 145 U. S., 409, [12 Sup. Ct., 969], does not sustain the court's conclusion that the board is a corporation. In that case certain persons were directed to do certain things, in the way of issuing bonds of a taxing district to a railroad company. Under the act the district became a stockholder of the railroad company, and the question arose as to the right of the district to vote its stock. The court held that under the act under which the bonds of the district were authorized to be issued to the railroad company, and its stock to be issued to the district, the district was created

a corporation, although not designated so by the terms of the act.

If such a question could and did arise in this case, as to whether the State had been created a corporation by the act under which the commission was created, then the doctrine of that case would be applicable. The county judge and others who acted for the taxing district in the Hancock case were not declared a corporation, but the district itself was adjudged to be a corporation; so there is not the slightest analogy between that and the case under consideration.

The right of Herr to sue the Kentucky Central Lunatic Asylum, 17 Ky. Law Rep., 320, [30 S. W., 971], was adjudged because the charter expressly permitted it "to sue and be sued."

It was said in Tate, &c., v. Salmon, &c., 79 Ky., 543: "It has been repeatedly decided by this court that, in the absence of law authorizing it, the State can not be made a party defendant or garnishee, and is not suable in her own courts; that parties will not be allowed to evade this inhibition by ignoring the State in their suits, and proceeding directly against the public officer having the custody of the moneys sought to be reached."

In the case of Williamson, by, &c., v. Louisville Industrial School of Reform, 95 Ky., 251, [44 Am. St. R., 243; 24 S. W., 1065], it appeared that it was a chartered corporation, with the usual powers to sue and be sued; and it was held to be an agency of the State, and for that reason it was held that it could not be sued.

The untenable position is assumed by the court, that, although you can not sue the State without her consent,

you can sue her agents without her consent, and appropriate money in their hands to the payment of the alleged claim against the State. If this were true, the doctrine that a State can not be sued would become obsolete, because parties would sue the agents, and not the principal. The board is said to be a corporation distinct from the State, bound for its obligations; yet its officers are the salaried officers of the State, make reports to the State of their acts, hold the funds of the State, and are commanded to cover the unexpended portion into the treasury of the State.

The action is, to all intents and purposes, one against the State. It is the State's property, and not that of the commissioners, that is to be affected by the judgment. It is the right of the State that is assailed. It is true, the attack is not made against the State directly, but through her officers. To proceed in this way is just as objectionable as if the action had been instituted directly against the State. Whoever deals with a sovereign State is aware that he must rely entirely upon the sense of justice and good faith of the State, and that the courts can not interfere to enforce contracts, except wherein she has given her consent.

Many authorities could be cited to sustain the conclusion reached in this dissenting opinion, but it is deemed unnecessary to do so.

JUDGE GUFFY CONCURRING.