The BOARD OF TRUSTEES OF the
UNIVERSITY OF KENTUCKY,
Appellant,

v.

COMMONWEALTH of Kentucky ex rel.
Robert F. STEPHENS, Attorney
General, Appellee.

Court of Appeals of Kentucky.

March 6, 1981.

Charles E. Shivel, Jr., Stoll, Kennon & Park, Lexington, for appellant.

Steven L. Beshear, Atty. Gen., Robert L. Chenoweth, Deputy Atty. Gen., Frankfort, for appellee.

Before HAYES, C. J., and HOGGE and VANCE, JJ.

HAYES, Chief Judge.

This appeal arises from a declaratory judgment in which the Franklin Circuit Court upheld the constitutionality of KRS 164.939 et seq. and further found that employees who share in clinically generated income are agents of the University of Kentucky, as defined in KRS 164.940(3) and that providing them with malpractice insurance is a matter of public concern not violative of § 3 and § 171 of the Kentucky Constitution.

The 1976 legislature enacted KRS 164.939 et seq. which provided a method and source of funds for satisfying medical malpractice claims against the University of Kentucky medical center. At that time, KRS 164.-941(8) provided that once the basic coverage fund was expended, any remaining claims would be paid out of the general fund of the Commonwealth, with repayment being made with interest at the earliest practicable time. In *McGuffey v. Hall*, Ky., 557 S.W.2d 401 (1977), the Kentucky Supreme Court held that a similar statute, KRS 304.-40–330(8)(c) was violative of § 50 and § 177 of the Kentucky Constitution because the statute attempted to obligate future general revenues and because the funding arrangement required the Commonwealth to lend its credit. In 1978, the legislature amended KRS 164.941(8) and enacted KRS 164.940(5) which described the excess coverage fund. The scheme now provides that if the basic coverage fund is exhausted, claims shall be satisfied from the excess coverage fund which consists of funds appropriated by the general assembly. The legislature appropriated to the excess coverage fund $5.5 million for the 1979–1980 biennium.

After the enactment of the amended version of KRS 164.939 et seq., U. K. continued to carry commercial malpractice insurance. Upon being informed by the Commonwealth Attorney General that such coverage was duplicative and an unnecessary expenditure of state funds, U. K. refused to discontinue the commercial coverage stating that because of *McGuffey* it was believed that KRS 164.939 et seq. was unconstitutional. The Attorney General then instituted the declaratory judgment action which resulted in the present appeal by U. K.

U. K.'s arguments on appeal are as follows: (1) KRS 164.939 et seq. is unconstitutional because it has the effect of lending

the credit and committing future general revenues of the Commonwealth; and (2) employees who share in clinically generated income are not agents of U. K. as defined in KRS 164.940(3) and providing them with malpractice insurance is for a private purpose in violation of § 53 and § 171 of the Kentucky Constitution.

■ U. K. contends that KRS 164.939 et seq. violates § 50 of the constitution because it creates a contingent liability against future general revenues. The case of *State Budget Commission v. Lebus*, 244 Ky. 700, 51 S.W.2d 965 (1932) held that a contingent liability is not within the concept of debt as it is used in § 50 of the constitution. The mechanism provided by these statutes does not create a debt, but at most, a contingent liability of the Commonwealth.

The creation of the excess coverage fund does not obligate future general funds. The general assembly may or may not appropriate revenues to the fund. As stated in *McGuffey* the purpose of § 50 is to allow each generation to spend its own money as it sees fit. We fail to perceive how this mechanism in any way prevents future generations from exercising their discretion in making appropriations.

■ Section 177 of the constitution provides that the credit of the Commonwealth shall not be given or pledged. U. K. maintains that the statutes in question also violate § 177. The only reason propounded by U. K. is that *McGuffey* held that § 50 is complemented by § 177, in that both seek to prevent encumbrances of future general revenues. As we have previously stated, the statutes do not create a liability against future general revenues, but a mere possibility of liability. Such was the finding of the trial court which we believe to have been the correct determination.

■ The next argument is twofold and deals with the persons covered by U. K.'s malpractice claims program. U. K. initially contends that employees who share in clinically generated income are not agents of U. K. as defined in KRS 164.940(3) which reads as follows:

"Agents" means members of the board of trustees of the university, its faculty, hospital staff, nurses, nurses' aides, volunteer workers, employees and students and all other persons involved in furnishing health care within the scope of their duties or courses of study in connection with the University of Kentucky. Employed physicians and dentists are agents of the university and within the scope of their duties when rendering professional services in emergencies and other special circumstances so long as such services do not constitute private practice for which the physician or dentist derives income.

The controversy has arisen because of a plan for compensation of medical practitioners employed by U. K. Under the plan, medical center employees who generate clinical income share in those revenues in addition to receiving a posted salary. The clinicians assign any practice income to the Kentucky Medical Services Foundation, Inc. which then redistributes the income to the practitioners on a departmental basis.

U. K. suggests that the clinical practice of these physicians is tantamount to a part-time private practice. Further, since income is derived from such practice, that these persons fall within the exception to the agent status. We cannot agree. The record demonstrates that the primary purpose of the clinical activity is to promote the goals of education, research and service at the medical center. Also though income may be derived from the clinical activity it is done so only in a roundabout fashion with the individual not setting or collecting a specified fee for his or her services. Since the purpose of clinical activity is to further the goals of U. K. and not to establish a means whereby private practice is established, we believe the activity could be classified as special circumstances under KRS 164.940(3).

■ U. K. secondly maintains that if this class of persons are considered agents of U. K., then providing them with malpractice insurance violates § 3 and § 171 of the constitution. These sections prohibit special privileges to a person or group and require a public purpose for all taxes and levies. The trial court found that:

In view of the vital functions performed by employees of the U. K. medical center, the benefits to the state, and the necessity of the program for the educational mission of the medical school, it seems clear that the provision of malpractice coverage for these employees is permissible under Sections 3 and 171 of the Constitution.

Since we have determined that the clinical activity's primary function is the furtherance of the educational and service goals of the medical center, even if the provision of insurance may be considered an emolument, it is being provided for public services within the purview of § 3. Concerning the § 171 claim, a particular act will not be declared to have been for a special purpose, if it promotes the general welfare and prosperity of those taxed to sustain it. *Carman v. Hickman County*, 185 Ky. 630, 215 S.W.2d 408 (1919). The funds in this instance are to be used to pay malpractice claims, in part, against those who practice in the clinics. Since the prime reason for the clinical activity is the achievement of the public purpose goals of the medical center, the legislation does not run afoul of § 171.

The judgment of the circuit court is affirmed.

All concur.