**Michael O. WITHERS, Michael O. Withers as Administrator of the Estate of Emilie M. Withers, Deceased; and Michael O. Withers as Legal Guardian of Joanna May Withers, a Minor, Appellants,**

v.

**UNIVERSITY OF KENTUCKY, Appellee.**

No. 96–SC–017–DG.

Supreme Court of Kentucky.

Feb. 27, 1997.

Shirley Allen Cunningham, Jr., Gerry L. Harris, Rosanna L. Peace, Lexington, for Appellants.

William J. Gallion, Gallion, Baker & Bray, P.S.C., Lexington, for Appellee.

William R. Garmer, Robert L. Elliott, Savage, Garmer & Elliott, P.S.C., Lexington, for Amicus Curiae, Kentucky Academy of Trial Attorneys.

Scott White, Director, Civil & Environmental Law Division, Office of the Attorney General, Frankfort, for Amicus Curiae, Office of the Attorney General.

John G. Irvin, McBrayer, McGinnis, Leslie & Kirkland, Lexington, for Amicus Curiae, Morehead State University.

Elizabeth Blincoe, Northern Kentucky University, Highland Heights, for Amicus Curiae, Northern Kentucky University.

Deborah Tomes Wilkins, Office of the President, Western Kentucky University, Bowling Green, for Amicus Curiae, Western Kentucky University.

C. Thomas Miller, Sheffer Hoffman, Paducah, for Amicus Curiae, Murray State University.

Giles T. Black, Eastern Kentucky University, Richmond, for Amicus Curiae, Eastern Kentucky University.

Harold S. Green, Sr., Kentucky State University, Frankfort, for Amicus Curiae, Kentucky State University.

Angela D. Koshewa, University of Louisville, Louisville, for Amicus Curiae, University of Louisville.

LAMBERT, Justice.

We are confronted again with the issue of sovereign immunity, a doctrine of law created by Section 231 of the Constitution of Kentucky. For decades this Court has struggled with whether various governmental entities are entitled to the protection of sovereign immunity, and of those which are, whether statutes or conduct of the immune entity amount to an express or an implied waiver. At issue here is whether the University of Kentucky is entitled to immunity from claims of medical negligence at its medical center, and, if so, whether statutes authorizing its participation in a malpractice compensation fund and its actual participation in the fund are sufficient to constitute a waiver of immunity.

■ Appellants brought this claim for wrongful death against the University of Kentucky arising out of the alleged medical negligence of certain physicians. They alleged that the negligent parties were agents of the University of Kentucky and that their conduct caused the death of Emilie M. Withers. The University of Kentucky sought dismissal on grounds of sovereign immunity. The trial court granted the motion to dismiss and subsequently denied appellants' motion to set aside the order of dismissal.[1] An appeal was taken to the Court of Appeals and that court affirmed the dismissal of appellee, the University of Kentucky. The

Court of Appeals squarely held that the University of Kentucky was entitled to sovereign immunity from its tortious conduct. For its decision, the court below relied extensively on *Hutsell v. Sayre,* 5 F.3d 996 (6th Cir. 1993), and its analysis of the state of sovereign immunity in Kentucky. We granted discretionary review and now affirm the courts below.

Appellants first contend that the University of Kentucky is not an entity which is entitled to sovereign immunity under our Constitution and laws. For this contention they rely extensively on *Kentucky Center for the Arts Corp. v. Berns,* Ky., 801 S.W.2d 327 (1991), and the test it recognized from *Gnau v. Louisville & Jefferson Co. Metropolitan Sewer District,* Ky., 346 S.W.2d 754 (1961). *Berns* articulated the test as follows:

This is a two-pronged test, the first consisting of the "direction and control of the central state government," and the second consisting of being "supported by monies which are disbursed by authority of the Commissioner of Finance out of the State Treasury."

*Berns,* 801 S.W.2d at 331.

■ The determination of whether an entity is entitled to protection by the constitutional principle of sovereign immunity is for the judiciary.

The judiciary has the ultimate power, and the duty, to apply, interpret, define, construe all words, phrases, sentences and sections of the Kentucky Constitution as necessitated by the controversies before it. It is *solely* the function of the judiciary to so do. This duty must be exercised even when such action serves as a check on the activities of another branch of government or when the court's view of the constitution is contrary to that of other branches, or even that of the public.

*Rose v. Council for Better Education, Inc.,* Ky., 790 S.W.2d 186, 209 (1989). The General Assembly has no power to extend or limit the class of entities entitled to sovereign

---

1. In addition to the University of Kentucky, appellants sued two or more physicians and those claims were unaffected by the dismissal of the University of Kentucky. We have firmly and repeatedly held that the immunity of the Commonwealth does not extend to its agents, servants and employees. *Gould v. O'Bannon,* Ky., 770 S.W.2d 220 (1989); *Happy v. Erwin,* Ky., 330 S.W.2d 412 (1959).

immunity as this determination must be made from Section 231 of the Constitution. *Berns,* 801 S.W.2d at 329. Contrary to appellants' contention, the University of Kentucky precisely meets the *Berns* test as set forth above. While we deem it unnecessary to repeat the analysis of the statutory existence of the University of Kentucky as contained in *Hutsell v. Sayre, supra,* it is appropriate to quote KRS 164.100 as follows:

> The University of Kentucky located at Lexington, is recognized as established and maintained. It is the institution that was founded under the land grant of 1862 by the Congress of the United States under the corporate designation and title of "Agricultural and Mechanical College of Kentucky." The university shall be maintained by the state with such endowments, incomes, buildings and equipment as will enable it to do work such as is done in other institutions of corresponding rank, both undergraduate and postgraduate, and embracing the work of instruction as well as research.

In addition, KRS 164.125(2), provides:

> The University of Kentucky shall be the principal state institution for the conduct of statewide research and statewide service programs and shall be the only institution authorized to expend state general fund appropriations on research and service programs of a statewide nature financed principally by state funds.

The language of KRS 44.073(1) establishes the University of Kentucky as an agency of the state and KRS 446.010(31) defines "state funds" or "public funds" in such a manner as to include sums paid to the University of Kentucky Medical Center for health care sciences.

Numerous other statutes contained in KRS 164 establish unmistakably that the University of Kentucky operates under the direction and control of central state government and that it is funded from the State Treasury. The immune status of the University of Ken-

tucky was expressly recognized in *Frederick v. University of Kentucky Medical Center,* Ky.App., 596 S.W.2d 30 (1980), a case involving the same statutory provision here under review, and likewise recognized in the leading case, *Dunlap v. University of Kentucky Student Health Services Clinic,* Ky., 716 S.W.2d 219 (1986). Even appellant virtually concedes the immune status of the University of Kentucky. Thus, on the basic question of whether the University of Kentucky is entitled to sovereign immunity, we have no reluctance to answer in the affirmative.

■ Appellants seek to avoid the blanket of immunity by reference to *Gross v. Kentucky Board of Managers,* 105 Ky. 840, 49 S.W. 458 (1899), a case from the last century which holds that not every corporation created by the state is entitled to sovereign immunity. *Gross* was relied upon in *Kentucky Center for the Arts v. Berns,* Ky., 801 S.W.2d 327 (1991), in making a distinction between a governmental function and a proprietary function performed by an entity having governmental roots. Relying on the "change in performance location" example found in *Berns,* 801 S.W.2d at 330–31, appellants contend that in a major aspect, the University of Kentucky Medical Center is nothing more than a hospital which is in full competition with and performs the same function as private hospitals. As such, they argue that in this respect, the University should be stripped of its immunity.

The answer to this contention is simple. The operation of a hospital is essential to the teaching and research function of the medical school. Medical school accreditation standards require comprehensive education and training and without a hospital, such would be impossible. Medical students and those in allied health sciences must have access to a sufficient number of patients in a variety of settings to insure proper training in all areas of medicine.[2] Such is essential to the mandate of KRS 164.125(1)(c).

---

**2.** Among the relevant accreditation standards are the following: *Functions and Structure of a Medical School—Standards for Accreditation of Medical Education and Programs Leading to the M.D. Degree, 1995; Graduate Medical Education Directory 1995–1996; The Proposed Revision of*

*Accreditation Standards and Guidelines for the Professional Program in Pharmacy Leading to the Doctor of Pharmacy Degree, January 15, 1996; Criteria and Guidelines for the Evaluation of Baccalaureate and Higher Degree Programs in Nursing, 1991; Accreditation Standards for Dental Ed-*

■ Moreover, and even if we were so inclined, there would be no authority for a decision of this Court whereby we refused to accord an immune entity its protection under the law. Sovereign immunity is "deeply implanted in the law of the Commonwealth through Section 231 of the Kentucky Constitution." *Kestler v. Transit Authority of Northern Kentucky*, Ky., 758 S.W.2d 38 (1988). Once it has been determined that an entity is entitled to sovereign immunity, this Court has no right to merely refuse to apply it or abrogate the legal doctrine. *Fryman v. Harrison*, Ky., 896 S.W.2d 908 (1995); *Calvert Investments, Inc. v. Louisville & Jefferson Metropolitan Sewer District*, Ky., 805 S.W.2d 133 (1991).

■ While the decisions of Kentucky appellate courts have not at all times been entirely consistent as to which entities are entitled to immunity derived from Section 231 of the Constitution of Kentucky, *Kentucky Center for the Arts v. Berns, supra*, states the proper standard for such determination and we reiterate that standard here.

The line between what is a state agency and what is a municipal corporation [3] is not divided by whether the entity created by state statute is or is not a city, but whether, when viewed as a whole, the entity is carrying out a function integral to state government. We use by analogy the language in *Kentucky Region Eight v. Commonwealth*, Ky., 507 S.W.2d 489, 491 (1974), holding that sovereign immunity should extend only to "departments, boards or agencies that are such integral parts of state government as to come within regular patterns of administrative organization and structure."

*Id.* at 332. There is no doubt that the University of Kentucky satisfies these requirements.

■ Upon our determination that University of Kentucky is entitled to sovereign immunity, we must next consider whether or in what manner there has been a legislative waiver of immunity. Immediately we observe that the granting of waiver is a matter exclusively legislative.

Where sovereign immunity exists by reason of the Constitution, the General Assembly may extend or limit waiver as it sees fit, but where no constitutionally protected sovereign immunity exists the General Assembly cannot by statute create it.

*Berns*, 801 S.W.2d at 329. *See also University of Kentucky v. Guynn*, Ky., 372 S.W.2d 414, 416 (1963), as follows:

As a matter of grace, such a remedy may be granted, withdrawn or restricted at the will of the legislature.

■ Appellants contend that KRS 164.939 *et seq.*, the "University of Kentucky Medical Center Malpractice Insurance Act," constitutes an express waiver of sovereign immunity. Based on these statutes, this Court held in *Dunlap v. University of Kentucky Student Health Services Clinic*, Ky., 716 S.W.2d 219 (1986), that legislative authority to purchase liability insurance constituted a partial waiver of sovereign immunity to the extent of available insurance coverage. *Dunlap* followed the *Taylor v. Knox County Board of Education*, 292 Ky. 767, 167 S.W.2d 700 (1942), line of cases [4] and interpreted statutes which authorized, but did not mandate, the purchase of liability insurance to be a "partial waiver of governmental immunity for the hospital to the extent that this insurance fund has been provided for by the statute." *Dunlap*, 716 S.W.2d at 222. A similar result was achieved in *Green River District Health Department v. Wigginton*, Ky., 764 S.W.2d 475 (1989), and *Kestler v. Transit*

---

ucation Programs—September 1995; Standards for Advanced Education Programs in General Practice Dentistry, Commission on Dental Accreditation, American Dental Association, December 1988.

**3.** In *Berns*, the Court explained that its use of the term "municipal corporation" is intended to mean any local government entity created by the state to carry out designated functions. *Id.* at 332.

**4.** Cases in the line are our recent decision in *Board of Education of Rockcastle County v. Kirby*, Ky., 926 S.W.2d 455 (1996), *Green River District Health Department v. Wigginton*, Ky., 764 S.W.2d 475 (1989), *Kestler v. Transit Authority of Northern Kentucky*, Ky., 758 S.W.2d 38 (1988), and *Moores v. Fayette Co.*, Ky., 418 S.W.2d 412 (1967).

*Authority of Northern Kentucky,* Ky., 758 S.W.2d 38 (1988), on the basis of statutes which permitted, but did not require, the governmental entity to maintain liability insurance. The effect of these cases was to find waiver whenever the governmental entity had purchased liability insurance and to the extent of the insurance which was available.

The General Assembly was in session when our decision in *Dunlap* was rendered. Immediately, and without even waiting for a ruling on rehearing, the General Assembly enacted certain new statutes designed unmistakably to overrule *Dunlap.* This fact was recognized in *Blue v. Pursell,* Ky.App., 793 S.W.2d 823 (1990), in *University of Louisville v. O'Bannon,* Ky., 770 S.W.2d 215, 216 (1989), and in *Hutsell v. Sayre,* 5 F.3d 996 (6th Cir.1993). *Green River v. Wigginton, supra,* and *Kestler v. Transit Authority of Northern Kentucky, supra,* both acknowledged the recent enactment of the new statutes, but on the basis of non-retroactivity, saw no need to fully analyze their effect.

KRS 44.072 began with a declaration of legislative intent with respect to the means whereby persons negligently injured by the Commonwealth must assert their claims. It continued:

> The Commonwealth thereby waives the sovereign immunity defense only in the limited situations as herein set forth. It is further the intention of the General Assembly to otherwise expressly preserve the sovereign immunity of the Commonwealth, any of its cabinets, departments, bureaus or agencies or any of its officers, agents or employees while acting in the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies and expressly waived as set forth by statute.

After having declared its intention to otherwise preserve sovereign immunity, the General Assembly enacted an express waiver pursuant to the Board of Claims Act. KRS 44.073(2), states as follows:

> The Board of Claims shall have primary and exclusive jurisdiction over all negligence claims for the negligent performance of ministerial acts against the Common-

wealth, any of its cabinets, departments, bureaus, or agencies, or any officers, agents or employees thereof while acting within the scope of their employment by the Commonwealth, or any of its cabinets, departments, bureaus, or agencies.

To prevent misunderstanding, if any there could have been as to its intention with respect to preservation or waiver of sovereign immunity, the General Assembly added KRS 44.073(14):

> The filing of an action in court or any other forum or the purchase of liability insurance or the establishment of a fund for self-insurance by the Commonwealth, its cabinets, departments, bureaus, or agencies or its agents, officers, or employees thereof for a government related purpose or duty shall not be construed as a waiver of sovereign immunity or any other immunity or privilege thereby held.

On the basis of the statutes quoted hereinabove and the general tenor of KRS 44.072 and KRS 44.073, we now believe that any construction of other statutes to result in a waiver of immunity which differs from the language of the Board of Claims Act is untenable. In various places throughout the Board of Claims Act, waiver of immunity is alluded to and in every instance an express waiver is required.

 We are enjoined by KRS 446.080 to construe the statutes of this state "to promote their objects and carry out the intent of the Legislature." We must construe all words and phrases according to the common and approved uses of language. *Coots v. Allstate Ins. Co.,* Ky., 853 S.W.2d 895 (1993), and *Gateway Construction Co. v. Wallbaum,* Ky., 356 S.W.2d 247 (1962). In obedience to the foregoing, we must apply literally the language which says that a waiver of sovereign immunity shall not be construed from the purchase of liability insurance or the establishment of a fund for self-insurance. We note that where two statutes concern the same or similar subject matter, the specific shall prevail over the general. *Kampschaefer v. Commonwealth,* Ky.App., 746 S.W.2d 567 (1988); *Land v. Newsome,* Ky., 614 S.W.2d 948 (1981).

The time has come to put an end to the uncertainty which has existed in this area of the law. As stated hereinabove, a test has been developed to determine whether an entity possesses the immunity of the Commonwealth. *Berns, supra.* If immunity exists, it is not lost or diminished or affected in any manner by the purchase of liability insurance or the establishment of an indemnity fund, whether directed or authorized by statute or merely undertaken without authorization, notwithstanding that such may have been an unnecessary expenditure of funds. Parenthetically, we observe that heretofore, due to the uncertain application of the doctrine of sovereign immunity, failure to maintain indemnity agreements would have been imprudent. All claims against immune entities fall squarely within the purview of the Board of Claims Act where resides exclusive jurisdiction for claims against the entity. The Board of Claims Act and sovereign immunity are co-extensive. *Berns*, 801 S.W.2d at 331, and *Gnau v. Louisville & Jefferson Co. Metropolitan Sewer District, supra.* It follows that a plea of sovereign immunity is an admission of Board of Claims jurisdiction.

This Court's decision in *Berns* raised but did not answer a question as to the proper construction of KRS 44.073(14). We said:

> The meaning of the 1986 statutory change remains undecided for another day when the statutory entity involved qualifies for sovereign immunity, thus making the question of waiver essential to the decision.

*Berns*, 801 S.W.2d at 332. The day for decision has now arrived. We hold that the 1986 statutory changes abrogated the rule in *Dunlap* and its line of decisions which found waiver of immunity based on the purchase of liability insurance whether or not pursuant to statutory authorization.

In KRS 44.072 and KRS 44.073, the General Assembly has manifested its determination to waive the immunity of the Commonwealth only narrowly and only by means of the Board of Claims Act. As such, persons having negligence claims against the Commonwealth may be heard in the Board of Claims, but not elsewhere. It should be recognized, however, that notwithstanding the provisions of the Board of Claims statutes, the General Assembly retains the power to subsequently enact other waivers as its discretion dictates.

Henceforth, in an effort to avoid the morass we have heretofore been in, we will observe a rule similar to the one found in *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662, 678 (1974), as follows:

> We will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464–65, 53 L.Ed. 742 (1909).

We will not address appellants' constitutional attack upon KRS 44.073 as it appears to be unpreserved by failure to include such issue on their pre-hearing statement and failure to give notice to the Attorney General as required by KRS 418.075 and *Maney v. Mary Chiles Hospital*, Ky., 785 S.W.2d 480 (1990). Moreover, appellants' constitutional claims would appear to be insubstantial.

For the foregoing reasons, we affirm the courts below.

COOPER, JOHNSTONE and LAMBERT, JJ., concur.

STEPHENS, C.J., concurs and files a separate concurring opinion.

WINTERSHEIMER, J., dissents by separate opinion in which GRAVES and STUMBO, JJ., join.

STEPHENS, Chief Justice, concurring.

While I concur with the majority, I would go further and revisit the two-pronged test we adopted in *Kentucky Center for the Arts v. Berns*, Ky., 801 S.W.2d 327 (1991), as I believe it went too far and usurped a function squarely within the discretion of the legislature. Section 231 of Kentucky's Constitution specifically states: "The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." By the very language of this section, sovereign immunity is retained for the Commonwealth until the General Assembly, by statute, expressly waives it.

However, the test annunciated by this Court in *Berns, supra,* potentially affords operations established, funded, and owned by the Commonwealth no protection of sovereign immunity. This surely does not comport with the purpose the original drafters of our constitution had in mind. Thus, I would leave the determination of what entities should be afforded sovereign immunity where it properly belongs, with the General Assembly.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the majority misapplies the standard of *Kentucky Center for the Arts Corp. v. Berns,* Ky., 801 S.W.2d 327 (1991), to the situation involved in this case and reaches the wrong conclusion.

The reasons we must disagree with the majority opinion are that pursuant to the existing precedential common law of Kentucky and the Kentucky Constitution, the Medical Center is not entitled to sovereign immunity; any claim of sovereign immunity which may exist has been waived, and, finally, the opinion itself ventures into territory that creates more questions than it answers.

The facts of this particular case need to be considered at least briefly. This is a wrongful death action brought by the administrator of the estate of Emilie M. Withers for damages allegedly sustained as the result of the negligent prescription of medications to Emilie Withers. Mrs. Withers began her treatment with a physician at the Medical Center on August 6, 1991, and that physician was under the supervision of two other physicians. She remained under the care of the treating doctor in training until September 6, 1992, when she died from allegedly negligently prescribed medications. The facts of this case are not fully developed to the degree that we really do not know the involvement of the treating physician, the pharmacist, the immediate supervisors of the physician, the Medical Center itself and finally, the University. The questions related to whether any of these individuals are employees of the University or the Medical Center appear to be open.

We have accepted this case as a discretionary review in a wrongful death action which involved alleged medical malpractice and negligence at the University of Kentucky Medical Center. The University of Kentucky was dismissed as a party by the trial judge on the basis of sovereign immunity and the Court of Appeals affirmed such dismissal.

Such cases are always serious in nature when they reach this Court. Here, the victim died. In another leading case, *Dunlap v. University of Kentucky Student Health Services Clinic,* Ky., 716 S.W.2d 219 (1986), a graduate student allegedly contracted Guillain Barre Syndrome as a result of an influenza shot which he received at the Medical Center Clinic. The injuries were serious and permanent, including quadriparesis. Perhaps in certain instances, reference to the Board of Claims, where there is $100,000 limit on recovery for injury or death, may be sufficient. However, in contemporary society where medical treatment can result in death, catastrophic injury and astronomically high expenses the sufficiency of a reference to the Board of Claims is questionable.

It is significant to note that in this case, the medical services provided by the Medical Center are exactly the same as those provided by other competing hospitals in the general area. This is the same situation noted in *Calvert Investments, Inc. v. Louisville & Jefferson County Metropolitan Sewer District,* Ky., 805 S.W.2d 133 (1991), in which the owner of a private sanitary sewer treatment facility was found not to be protected by sovereign immunity. *Calvert, supra,* held that when performing services similar to a private corporation the agencies of government should be liable for their negligent actions. In *Calvert,* it was held that the MSD and the Board of Health are special districts established by statutes enacted by the General Assembly to carry out a limited public purpose, in a local area. Common law tort immunity has long been repudiated for similarly structured governmental corporations, although municipal, whether the activity is governmental or proprietary in nature. *Cf. Haney v. City of Lexington,* Ky., 386 S.W.2d 738 (1965) and *Gas Service, Inc. v. City of London,* Ky., 687 S.W.2d 144 (1985).

*Stephenson v. Louisville & Jefferson County Board of Health*, Ky., 389 S.W.2d 637 (1965), held that the doctrine of governmental immunity has been repudiated in determining that negligence could be considered for personal injuries suffered by a hospital patient.

In our contemporary society, government has become increasingly entangled in every aspect of human endeavor. When so engaged, government obviously becomes the subject of an analysis as to what its proper function is. The increasing involvement of government in everyday life opens it to the possibility of negligent conduct which must be compensated in a reasonable fashion. It is necessary to realize there are two classes of powers inherent in the nature of government. One, is a so-called governmental function, and the other has character of a proprietary or private basis. There is no perfect assignment of responsibilities and each situation must be treated on a case-by-case approach. Sovereign immunity may exist when the state is engaged in a purely governmental activity. Here, if a teaching hospital is so different from its competitive neighbors, such a policy should be clearly set out by either the General Assembly or as a last resort, developed by this Court in a comprehensive fashion.

It should be recalled that Section 54 of the Kentucky Constitution provides that the General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.

In addition, Section 241 of the Kentucky Constitution provides in pertinent part that whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then in every such case, damages may be recovered for such death from the corporation and person so causing the same.

Immunity is a barren legal concept that is generally used as a shield for those who have committed some wrong so as to prevent their legal liability. Accountability and responsibility are far better standards to be applied in our advanced civilized society. The courts of Kentucky and others in the nation have recognized the manifest injustice and unfairness of such a doctrine, and its application has been severely limited by numerous court decisions as well as legislative enactments.

The seminal case in this area is *Kentucky Center for the Arts Corp. v. Berns, supra.* In that case the particular issue was whether the Kentucky Center for the Arts should enjoy the protection of sovereign immunity. The *Berns* majority opinion establishes the test for whether a governmental agency is entitled to sovereign immunity and held that the Kentucky Center for the Arts was not entitled to such immunity, although it is clearly a state agency. In *Berns,* a majority of the court recognized that sovereign immunity has been historically troublesome to our court resulting in diverse decisions difficult to reconcile. *Berns* understood that at the time of the adoption of the 1890 constitution, sovereign immunity did exist as it related to some state agencies but such protection did not extend to every state unit. The question then arises as to which state agencies are protected and which are not. *Berns* noted that the question of immunity must be considered on a case-by-case basis under the authority of Section 231 of the Kentucky Constitution which limits the application of the doctrine of sovereign immunity to suits against the Commonwealth. Section 231 does not prohibit suits against the Commonwealth, but states in precise language that "the general assembly may, by law, direct in what manner and in what courts, suits may be brought against the Commonwealth."

The Board of Claims was established by KRS 44.070 through 44.110 under the authority of the constitutional section and its function and power is judicial although limited. *Motor Insurance Corp. v. Commonwealth,* Ky., 336 S.W.2d 44 (1960). *Berns* stated that the General Assembly has no power to expand the protection of sovereign immunity and that where no constitutionally protected sovereign immunity exists "the general assembly cannot by statute create it." The *Berns* court further observed that nothing in Sections 230 or 231 of the Kentucky Constitution:

[n]or in the records accompanying their enactment ... presupposes any broad grant of sovereign immunity in the discre-

tion of the legislature or beyond activities commonly understood as performed by central state government at the time the constitution was enacted.

*Berns* at 329.

A method of determining which units connected to government are within the ambit of sovereign immunity should be whether, when viewed as a whole, the entity is carrying out a function integral to central state government. *Berns* developed a test for immunity reflecting the rationale noted in *Gnau v. Louisville & Jefferson County Metropolitan Sewer District*, Ky., 346 S.W.2d 754 (1961). *Gnau* held that just because an entity is termed an "agency of the state" does not mean that it automatically comes within the purview of KRS 44.070. Agencies which are not autonomous public entities exercising a nonintegral function of state government are not entitled to immunity. Even though state institutions of higher education have been designated as "agencies" of the state of Kentucky by the General Assembly in KRS 44.073, such a statement does not create sovereign immunity where it did not already exist. We cannot envision any responsible state organization seeking to avoid the natural consequences of its proprietary acts and conduct.

The test of whether immunity is available depends on whether the entity meets both prongs of the test promulgated in *Berns* and *Gnau*. There is a difference between whether a so-called "agency" is actually an integral part of the state government with the immunity of the Commonwealth or simply an agency performing a related governmental function and consequently not entitled to immunity. This standard has two parts and both parts must be satisfied before sovereign immunity can apply. The standards are 1) that the agency must be under the direction and control of the Central State Government and 2) the Agency must be supported by moneys which are dispensed by the authority of the Commissioner of Finance out of the state treasury. *Berns* at 331.

We must initially determine whether the University of Kentucky Medical Center is under the direction and control of state government. The A.B. Chandler Medical Center is a subdivision of the University which was created in 1962 and is controlled by the Board of Trustees of the University. Obviously, this is long after the adoption of the current Kentucky Constitution, a factor noted in *Berns*. The Board of Trustees of the University, not the state government, controls the University of Kentucky. Neither the University, nor the Medical Center, are under the direction and control of Kentucky State Government.

KRS 164.131 provides that the government of the University resides with the Board of Trustees. It was the University Board of Trustees that established the Medical Center, not the Commonwealth of Kentucky. *Berns* stated that an agency of the state may be sued for its corporate acts just as any other corporation because it is a corporation with all the usual corporate powers. The majority opinion in this case indicates that such claims should be directed to the Board of Claims.

There is an elaborate set of statutes promulgated by the General Assembly relating to the establishment of the University of Kentucky. The Board of Trustees has the power to create and maintain the colleges, schools, divisions, departments, bureaus and offices which constitute the University. KRS 164.120. The Board may distribute these divisions for effective instruction and administration. KRS 164.210. The Board has exclusive jurisdiction over the appointment of a president, all professors and other personnel as well as over their duties and compensation. These statutes clearly indicate that the University is not under the direction and control of Central State Government as envisioned by *Berns*. The Board of Trustees acts autonomously from Central State Government and is not a division of the Department of Education. KRS 164.285. An entity that is a separate corporate body and which exercises such autonomy cannot be genuinely considered to be under the direction and control of the state. Consequently, the University and the Medical Center, as a part of it, are so independent from Central State Government that they cannot claim the protection of sovereign immunity.

The University does not meet the second part of the test set out in *Berns.* The threshold issue is whether the Medical Center is supported by funds which are paid by the state treasury. Here, the University pays claims against its Medical Center with its own funds and under its own terms and not out of the state treasury or under the direction of the Commissioner of Finance. KRS 164.939 provides for a University of Kentucky Medical Center Malpractice Insurance Fund. The statute allows the University to establish from its own funds, other than general tax revenues, a fund to pay health care malpractice claims or judgments against itself or its agents. KRS 164.941(3) gives authority to the Board of Trustees to establish such a fund to be used for claims for liability resulting from activities performed by the University or its agents. Such fund is retained by the State Treasurer in a separate account and no portion of such fund shall ever lapse or revert to the General Fund. If there is a judgment against the University or the Medical Center, the fund shall be disbursed by the Secretary of Finance only on written certification of the University. KRS 164.941(5). The fund may be terminated only upon a showing by the University that existing and future health care malpractice claims or judgments will be paid. In the event that the fund is terminated, the balance shall be returned to the University. The Board of Trustees has created and continues to maintain such a fund.

If the basic malpractice insurance fund is depleted or exhausted, the General Assembly has provided that claims will be satisfied from an excess coverage fund in KRS 164.940(5). A review of these statutes clearly indicates that the legislature has provided the means to insure that a judgment against the Medical Center will never reach the State Treasury, in compliance with Section 230 of the Kentucky Constitution. The detail and specificity of the statutes involved demonstrate that the University of Kentucky has total and exclusive control over the disbursement of the insurance fund if a medical malpractice judgment is ever obtained. It is the University, not the Commissioner of Finance, who authorizes payment from the fund. No money comes from the State Treasury.

Every rule of law must have a rational reason for its existence. The doctrine of sovereign immunity is based on the desire to protect the Treasury of the state which is supported by tax money primarily and should be safe from unnecessary or frivolous claims. Any prudent steward of taxpayer funds deposited in the Treasury should protect them by first avoiding negligent conduct. However, certain accidents or mistakes can occur. It is the duty of the steward of public funds to foresee such eventualities and to protect against them. Surely a properly instructed jury can discern between negligence and a simple faultless mistake. Liability is now subject to an apportionment instruction since *Hilen v. Hays,* Ky., 673 S.W.2d 713 (1984). In this case it is possible that the principal wrongdoer, if any, might be the treating physician, the pharmacist who prepared the medication, the immediate supervisor of the physician or even more remotely, the Medical Center, and finally in the distance, the University. Common sense can be applied by any impartial finder of facts to such a situation. *Gould v. O'Bannon,* Ky., 770 S.W.2d 220 (1989), requires the individual wrongdoer to be the one primarily liable for negligent conduct. *O'Bannon, supra,* states that individual state employees are accountable for their actions and torts and describes the distinction between discretionary and ministerial functions. Discretionary acts will not result in liability when negligently performed, but the administration of medical care is a ministerial function by employees, including doctors. Compliance with the applicable standard of care does not involve a discretionary governmental function.

We are faced with the inescapable conclusion that the University and its Medical Center are not controlled by Central State Government, and it is not wholly supported by moneys from the Treasury of the Commonwealth. The University and its Medical Center are not covered by immunity but are rather a different kind of agency performing a function which does not enjoy such protection. It is not performing a function integral to Kentucky State Government although it may be important. The function of government is rather narrow as demonstrated in

*Gnau.* It is beyond question that Sections 230 and 231 clearly relate only to strictly governmental functions of the Commonwealth as distinguished from proprietary functions.

In a case of catastrophic illness or a malpractice claim such as the subject of this case, it is not beyond the realm of possibility that a person could lose a right to maintain an action against a negligent wrongdoer simply because the person chooses or was taken to a hospital with which the state had some relationship. If that were the case, any fully informed patient would never choose to be treated at the Medical Center. The Kentucky Constitution recognized and this Court repeatedly reaffirmed the right of injured persons to have the opportunity and right to be compensated for their injuries. *See* Const. §§ 14, 54 and 241.

We must understand that the singular purpose of sovereign immunity is to keep public funds or the State Treasury from being diverted from public governmental programs. The public policy of the Commonwealth to protect public funds and public property was enunciated in *Foley Construction Co. v. Ward,* Ky., 375 S.W.2d 392 (1964). In this instance, any possible medical malpractice judgment against the Medical Center would be paid from the fund set up particularly for that purpose and clearly does not invade the State Treasury or general public funds in any way. There is no necessity to employ immunity in such circumstances.

This Court has long recognized its duty to protect citizens against unlawful legislative intrusion on constitutional rights provided under Sections 14, 54 and 241 of the Constitution. The line separating persons and entities entitled to claim sovereign immunity is not one which the General Assembly may draw in its discretion, but a question of constitutional law which the court must address on a case-by-case basis. Section 231 does not by its express terms elevate common law sovereign immunity to the status of a constitutional principle. *Berns* at 329.

In any event, the Medical Center has waived any possible immunity through the establishment of a fund to cover medical malpractice lawsuits. KRS 164.939 *et seq.*

establishes a fund relative to medical malpractice claims. The constitutionality of these statutes was determined in *Board of Trustees of University of Kentucky v. Commonwealth,* Ky.App., 625 S.W.2d 867 (1981). *Dunlap v. University of Kentucky Student Health, supra,* held that KRS 164.939 was a partial waiver of immunity for the Medical Center Hospital to the extent of insurance coverage. The majority opinion believes that it was the intent of the General Assembly in enacting KRS 44.073 to avoid the consequences of *Dunlap, supra,* and that the legislature intended to restore immunity for the Medical Center. The majority asserts that the statute abrogates the opinion of this Court in *Dunlap.* We must disagree.

KRS 44.072 enunciates a legislative intent to the effect that sovereign immunity is preserved except where immunity is specifically and expressly waived as set forth by statute. *Dunlap* determined that there was such a specific waiver of immunity in the elaborate provisions of KRS 164.939 *et seq.*

It should be remembered that the amendments to KRS 44.072 and 44.073 were effective July 15, 1986, and the modified opinion in *Dunlap* was not finally rendered until September 25, 1986. The *Dunlap* majority did not alter its interpretation of the effect on the medical malpractice fund although it had the clear opportunity to consider the effect of the statutory amendments.

On the question of waiver, this Court has repeatedly recognized the validity of *Dunlap. Kestler v. Transit Authority of Northern Kentucky,* Ky., 758 S.W.2d 38 (1988), held that a transit authority could not claim sovereign immunity because a statutory system mandating the purchase of liability insurance existed which clearly contemplated a limited waiver of government immunity. It would certainly appear that that holding is in conflict with KRS 44.072 and 44.073 which was the attempt to keep the purchase of liability insurance by the Medical Center from being a waiver of immunity. *Kestler, supra,* raises concerns about the constitutionality of KRS 44.072 and 44.073.

Considerable questions still remain about the relationship of these various statutes and

the practical result. The legislation indicates that the University of Kentucky cannot be made a defendant in a lawsuit, however, apparently the University continues to contribute funds to an account in order to pay against such claims. *Berns* states that KRS 44.073 is imprecise and that the legislature may have intended to change the situation by the enactment of KRS 44.073(14) and that it should have so stated with precise language that immunity, where it exists, is not waived by the purchase of liability insurance even where the legislature expressly directs its purchase.

The majority opinion moves directly into the morass which it styles the state the law is in and determines that all of these claims should be referred to the Board of Claims without further ado. This is a direct conflict with established procedure endorsed by Kentucky courts for a number of years. Our court has consistently held that any purchase of liability insurance that is mandated or permitted by statute is a waiver of immunity. *Green River District Health Dept. v. Wigginton*, Ky., 764 S.W.2d 475 (1989) held that where there is a statute authorizing an immune entity to purchase liability insurance for the protection of the public, the effect of the statute is to permit suit against the county or state. The message has been clear that once an entity entitled to immunity has purchased insurance pursuant to a statute permitting such purchase, the immunity has in effect been waived to the extent of the insurance coverage.

As noted by then Chief Justice John S. Palmore in his dissent in *Cullinan v. Jefferson County*, Ky., 418 S.W.2d 407 (1967), "sovereign immunity should be strictly limited to what the constitution demands for the simple reason that in a civilized society it is morally indefensible."

We should note that other legal authorities on torts such as Prosser & Keeton on Torts (5th ed. 1984) state:

> The most striking feature of the tort law of governmental entities today is that immunities, once almost total, have been largely abolished or severely restricted at almost all levels, all often though a complex process in which scholars and commentators, judges and legislators all play an important role.

The concept of the king can do no wrong, or that government can do no wrong, or that government cannot simply afford to compensate those whom it damages or injures in circumstances where a similar private entity would be required to pay, is unacceptable in any just or civilized society. As noted by Justice Palmore in *Cullinan:*

> It is as much the duty of government to render prompt justice against itself in favor of its citizens as it is to administer the same between private individuals.

Citing Abraham Lincoln, December 3, 1861, first annual State of the Union message.

The majority opinion in this case breaks entirely new ground based on a misunderstanding of the legislative response to *Dunlap* and in effect overrules *Berns* as well as a number of other cases, both old and new. It proposes to end the morass but establishes a new chaos by sending all victims of state negligence to the Board of Claims and evidently eliminates the need for the purchase of any liability insurance. The statutory limit of $100,000 recovery found in the Board of Claims legislation may be of questionable constitutional validity in view of Sections 14, 54 and 241 of the Constitution. Even with the most generous interpretation, there is a significant tension between these sections of the Constitution and the majority's application of Sections 230 and 231. The Board of Claims is a five-person board created by statute meeting quarterly. It would seem to be ill-equipped to meet the claims of all governmental agencies.

Accountability and responsibility for all entities who are negligent is the standard that should be applied in the Twentieth and Twenty-first Centuries. The system now in place properly protects public funds and public property while reasonably affording an opportunity to victims of malpractice and negligence to obtain legitimate compensation.

Finally, we must question the wisdom of overturning long standing precedent when the case presented here can be decided on other grounds. This case can be disposed of along the lines of KRS 418.075 because the

plaintiff has failed to serve the Attorney General with a notice required when constitutional questions are raised. The validity of a statute should be challenged before the judgment is entered. *Adventist Health Systems v. Trude,* Ky., 880 S.W.2d 539 (1994), refused to consider the question of constitutionality of a statute because the appellant failed to give such notice at the trial level to the Attorney General. Here, the majority opinion delves into complex issues of constitutionality in a completely spontaneous fashion, depriving counsel for both sides of the opportunity to respond to the novel conclusion that all claims should now be referred to the Board of Claims and without the participation of the Attorney General.

As *Berns* wisely notes, these matters should be considered on a case-by-case basis. Obviously, the venal or aggressive plaintiff in some instances may have tarnished the expectations of the innocent victim. Surely, the coffee spills and bad paint jobs in the public news currently are one exaggeration and extreme, but death from a bad prescription is entirely another matter. In what may be a well-intentioned effort to rush to cleanse the stables of over zealous plaintiffs, the majority seems to have ignored the legitimate concerns of innocent victims of malpractice or negligence as a result of conduct by a nongovernmental agency.

We are not unmindful of the concerns expressed about municipalities in *City of Louisville v. Louisville Seed Co.,* Ky., 433 S.W.2d 638 (1968). In the practical world, governmental immunity cannot be abandoned. It must be applied in a careful, consistent manner on a case-by-case basis under the guidelines of *Berns* so as to achieve a just result consistent with all sections of the Constitution.

GRAVES and STUMBO, JJ., join in this dissent.