RENDERED: OCTOBER 31, 2019
TO BE PUBLISHED

$$\mathfrak{Supreme\ Court\ of\ Kentucky}$$

2018-SC-000193-TG

FINAL
DATE 11|25|19 JAF

UNIVERSITY OF KENTUCKY, A/K/A                        APPELLANTS
UK HEALTHCARE; AND MARK F.
NEWMAN, IN HIS OFFICIAL CAPACITY AS
EXECUTIVE VICE PRESIDENT FOR
HEALTH AFFAIRS,
UNIVERSITY OF KENTUCKY


            ON TRANSFER FROM COURT OF APPEALS
                CASE NO. 2018-CA-000584-MR
V.          FAYETTE CIRCUIT COURT NO. 17-CI-00479


SARAH R. MOORE; COMMONWEALTH OF                     APPELLEES
KENTUCKY, DEPARTMENT OF REVENUE;
AND DANIEL P. BORK, COMMISSIONER,
KENTUCKY DEPARTMENT OF REVENUE

AND

                    2018-SC-000194-TG


COMMONWEALTH OF KENTUCKY,                           APPELLANTS
DEPARTMENT OF REVENUE AND
DANIEL P. BORK, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF THE
KENTUCKY DEPARTMENT OF REVENUE


            ON TRANSFER FROM COURT OF APPEALS
                CASE NO. 2018-CA-000585-MR
V.          FAYETTE CIRCUIT COURT NO. 17-CI-00479

SARAH R. MOORE                                      APPELLEE

            OPINION OF THE COURT BY JUSTICE HUGHES

      AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

Kentucky Revised Statutes (KRS) Chapter 45 includes a statutory process for the collection of debts owed the Commonwealth. Using this statutory framework, the University of Kentucky referred Appellee Sarah Moore's delinquent UK HealthCare[1] accounts to the Commonwealth of Kentucky, Department of Revenue (the Department) for collection. The Department's collection efforts included imposition of a 25% collection fee and interest as well as garnishment of Moore's paychecks, bank accounts, and tax refunds. Moore petitioned the circuit court for a declaration that the University is not an agency within the executive branch as required by KRS 45.237(1)(a) and therefore not authorized to refer its accounts to the Department. After rejecting the University's claim that sovereign immunity barred Moore's action, the circuit court agreed with Moore's position, declaring the University is not in the executive branch of state government for purposes of KRS 45.237 *et seq.* Both the University and the Department appealed, and the appeals were transferred from the Court of Appeals to this Court. For reasons stated below, we affirm the circuit court's decision that sovereign immunity does not bar this action against the University, but reverse the court's holding that the University is not within the executive branch. Having addressed these threshold issues, we remand this case to the circuit court for further proceedings.

---

[1] UK HEALTHCARE is the registered service mark used by the University of Kentucky to brand the provision of medical services through the University Medical Center and University clinics.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellee Sarah R. Moore sought medical care for herself or one of her dependent children at a University of Kentucky health care facility five times between May 2011 and December 2012. When Moore failed to pay the medical bills, UK HealthCare did not file a civil action against Moore to collect the accounts, but instead certified each account as an "agency" debt and then referred it to the Department of Revenue for collection. The Department operates the Enterprise Collections Office to collect other agency-referred debt and the University claimed the qualifying "agency" status pursuant to KRS 45.237(1)(a). The Department's efforts to collect Moore's UK HealthCare debt proceeded in the standard manner with imposition of a 25% collection fee and interest on the debt and then enforcement through garnishment of Moore's state and/or federal tax refunds and her bank accounts and paychecks. The Department's collection process for agency-referred debt does not include securing a judgment against the debtor for the amount owed and thus no judgment was ever obtained against Moore.

Moore filed suit against Defendants/Appellants University of Kentucky-UK HealthCare and UK's Executive Vice President for Health Affairs, Michael Karpf,[2] (collectively referred to as "UK"), and the Department of Revenue and its Commissioner, Daniel P. Bork (collectively referred to as "the Department"). Moore's complaint alleged that neither the University nor UK HealthCare is an

---

[2] The position is currently held by Mark Newman, Karpf's successor.

3

agency within the executive branch as required by KRS 45.237(1)(a), and thus the statutory collection process is not available to them. Moore sought a judgment declaring that UK and UK HealthCare may not legally refer Moore's debt to the Enterprise Collections Office for collection and consequently the Department of Revenue[3] and/or the Enterprise Collections Office may not legally undertake efforts to collect debt owed to UK,[4] including efforts such as garnishing Moore's bank accounts, wages and tax refunds. The complaint also alleged that UK breached the contractual implied covenant of good faith and fair dealing, and that both UK and the Department violated the Takings and Due Process Clauses of the Fifth Amendment to the United States Constitution, and violated Section 2 of the Kentucky Constitution by exercising absolute and arbitrary power over Moore's liberty and property.

Moore subsequently amended her complaint, leaving only her request for declaratory relief. Contemporaneously, UK and the Department each moved the trial court to dismiss the claims against them pursuant to Kentucky Rule of Civil Procedure (CR) 12.02. UK maintained that it is a state agency that shares the Commonwealth of Kentucky's sovereign immunity.[5] The Department moved for dismissal on the grounds that the circuit court did not have subject-

---

[3] This "Department of Revenue" reference was added in the amended complaint discussed *infra*.

[4] Moore also asserted that the debt of similarly-situated persons could not legally be referred by UK to the Enterprise Collections Office and collection of amounts allegedly owed could not be legally undertaken by the Enterprise Collections Office.

[5] UK also argued that as a state agency, UK properly referred its delinquent accounts to the Enterprise Collections Office and has no vicarious liability for any acts or omissions of the Department.

matter jurisdiction to decide the "agency" question since the Kentucky Board of Tax Appeals (KBTA) holds exclusive jurisdiction to hear actions regarding the Department's revenue-collection activities and Moore has not exhausted her administrative remedies with the KBTA. Finding that Moore's amended complaint only sought a declaration of rights against a government entity, the circuit court concluded that sovereign immunity did not bar its jurisdiction to declare those rights.

In her amended complaint, Moore requested a declaration that UK is not an agency, defined in KRS 45.237(1)(a) as an "organizational unit or administrative body in the executive branch of state government"; that the University may not lawfully refer the accounts of UK HealthCare to the Department of Revenue under KRS 45.237 *et. seq.* for collection; and that the Department of Revenue may not lawfully collect such accounts. By separate motion, Moore presented the narrow question of whether UK is an agency "within the executive branch."[6] Collectively, UK and the Department opposed

---

[6] Moore's memorandum in support of her separate Motion of Plaintiff for Declaratory Judgment That the University of Kentucky is Not an Agency "In the Executive Branch of State Government" stated:

> The crux of this case, and the focus of this motion, is whether state law allows the University to refer its accounts to the Department to be collected in this manner [e.g., without obtaining a court judgment; garnishing wages, bank accounts, tax refunds; and adding a 25% collection fee to the accounts]. In short, the issue is whether the University is an agency "in the executive branch of state government," as required by the governing statutes. If the University is not an agency "in the executive branch," then the University may not refer its accounts to the Department, and the Department may not collect the University's accounts in the manner described above.

5

the declaratory judgment action and motion arguing pertinently that UK is part of the executive branch;[7] Fayette Circuit Court lacks subject-matter jurisdiction because Moore has not exhausted the administrative remedies available to her; and sovereign immunity bars the declaratory judgment action because Moore does not allege an ongoing violation of law and because the declaratory/injunctive relief exception to sovereign immunity cannot be used to obtain money or forgive debt.

Following an initial order rejecting the sovereign immunity claim, the trial court entered an order and judgment granting Moore's motion for declaratory judgment, confined to the executive branch issue, stating:

> [H]aving expressed the reasons for its decision in open court [and those reasons being] incorporated herein by reference, . . . [j]udgment shall be entered pursuant to the Kentucky Declaratory Judgment Act that the defendant, University of Kentucky, is not "in the executive branch of state government" for purposes of KRS 45.237 *et seq.* and KRS 12.010.

The trial court designated its judgment as final and appealable.

After the trial court denied UK's and the Department's separate motions to alter, amend or vacate the order and judgment and again designated its order final and appealable,[8] each filed a notice of appeal and a motion to

---

[7] UK stated that while it is independent of the Governor in many respects, it remains a part of the executive branch.

[8] UK's grounds for the motion were: 1) sovereign immunity bars a declaratory action when the requested declaratory judgment could result in a monetary judgment in another case or forum; 2) the circuit court's analysis was flawed and incomplete when it ignored KRS 131.130(11) and resulted in an impermissible advisory opinion; and 3) the University is not a fourth branch of government. The Department's grounds were: 1) the circuit court made a fundamental error of law when it reasoned that UK is not part of the executive branch of Kentucky state government; 2) during its oral ruling from the bench, the circuit court improperly cited and relied upon an

6

transfer their appeal to this Court. This Court accepted transfer of the ensuing appeals pursuant to CR 74.02.

## II.  ANALYSIS

The only two questions before the Court are whether the University of Kentucky is within the executive branch for purposes of KRS 45.237 *et seq.*, and, if so, whether sovereign immunity bars this declaratory judgment action against the University and the Department. These questions of law are reviewed *de novo. Jacobsen v. Commonwealth*, 376 S.W.3d 600, 606 (Ky. 2012).

Before addressing the questions presented, we note that numerous other issues and arguments were presented to the trial court, and the parties' briefs to this Court largely restate those arguments, but those issues are beyond the scope of the circuit court's order and judgment. When the circuit court decided that the University is not part of the executive branch for purposes of KRS 45.237 *et seq.*, it consequently decided, although not expressly stated, that the entire bill collection process under KRS 45.237 *et seq.* was not properly applicable to UK and the administrative remedies were not properly applicable as well. Consequently, premised upon a finding that the University is an agency within the executive branch, the Department's argument that the circuit court did not have subject-matter jurisdiction because Moore failed to exhaust her administrative remedies before filing this action was not decided

unpublished Franklin Circuit Court decision; and 3) the Department has authority to collect UK's debts under KRS 131.130(11).

by the circuit court and is not an issue presently before this Court. Neither are any other issues raised in the briefs, such as Moore's other arguments related to the impropriety of employing KRS 45.237 *et seq.* to collect her UK HealthCare accounts, and UK's and the Department's arguments that KRS 131.130(11) permits state universities to refer debts to the Department for collection.

## I. The University of Kentucky Is within the Executive Branch of State Government

In 2004, the General Assembly enacted a new section of KRS Chapter 45 relating to collection of debts owed the Commonwealth. 2004 Ky. Acts, ch. 192. As noted, Moore's complaint challenged the Department's debt collection process for debt certified by UK HealthCare, which included garnishing her paychecks, bank accounts, and tax refunds without the amount Moore owed to UK HealthCare ever being reduced to judgment. Moore challenges UK's and the Department's collection process pursuant to KRS Chapter 45 by first seeking a declaration that UK HealthCare is not an agency "in the executive branch of state government" within the ambit of KRS 45.238(1), a declaration that would render UK HealthCare's delinquent account referral to the Department and the ensuing collection process legally improper. In short, if UK is not in the executive branch, Moore prevails in this case.

KRS 45.238(1) states: "Debts that are certified by an agency or by a local government as provided in KRS 45.237 shall be referred to the [Department of Revenue] for collection. The [Department of Revenue] shall be vested with all

the powers necessary to collect any referred debts."[9] For purposes of KRS 45.238(1), "agency" means "an organizational unit or administrative body in the executive branch of state government as defined in KRS 12.010." KRS 45.237(1)(a). KRS 12.010(1) defines "organizational unit" as "any unit of organization in the executive branch of the state government that is not an administrative body, including but not limited to any agency, program cabinet, department, bureau, division, section or office."[10] In turn, KRS 12.010(8)

---

[9] KRS 45.238(1) was last amended in 2013 with incorporation of the text *"or by a local government."*

[10] Definitions are provided within KRS 12.010 for every organizational entity identified except "agency" and "bureau."

KRS 12.010 provides:

In [KRS Chapter 12, Executive Branch Administrative Organization], and throughout the Kentucky Revised Statutes where applicable and appropriate unless the context requires otherwise:
(1) "Organizational unit" means any unit of organization in the executive branch of the state government that is not an administrative body, including but not limited to any agency, program cabinet, department, bureau, division, section or office;
(2) "Department" means that basic unit of administrative organization of state government, by whatever name called, designated by statute or by statutorily authorized executive action as a "department," such organization to be headed by a commissioner;
(3) "Division" means a major subdivision of a department established by statute or by statutorily authorized administrative action, such to be headed by a director;
(4) "Branch" means a small grouping of logical workforce personnel, such to be headed by a manager;
(5) "Section" means a smaller grouping within a branch, such to be headed by a supervisor;
(6) "Unit" means the smallest grouping of coordinated employees, such to be headed by a leader;
(7) "Office" means a staff support or administrative function and shall be a major subdivision of a program cabinet only, such to be headed by an executive director;
(8) "Administrative body" means any multi-member body in the executive branch of the state government, including but not limited to any board,

defines an "administrative body" as "any multi-member body in the executive branch of the state government, including but not limited to any board, council, commission, committee, authority or corporation, but does not include 'branch,' 'section,' 'unit' or 'office.'"[11]

KRS 12.010(1) and KRS 12.010(8) place limits on the definitions of "organizational unit" and "administrative body" by informing the reader not only what each is, but also by stating what it is not, and by providing examples of entities which would qualify. "University" or "institution"[12] is not a listed

---

council, commission, committee, authority or corporation, but does not include "branch," "section," "unit" or "office";
(9) "Program cabinet" means a group of departments, or departments and administrative bodies, designated by statute or statutorily authorized executive action as a "program cabinet."

[11] KRS 12.010(9)'s definition of "program cabinet," along with KRS 12.015, explains administrative bodies are included in an existing program cabinet or department.

KRS 12.015 states:

Unless specifically provided otherwise, each administrative body established by statute or statutorily authorized executive action shall be included for administrative purposes in an existing department or program cabinet. When an administrative body is established and the law establishing it does not specify the department or program cabinet within which the body is to be included, the Governor shall assign the body to an existing department or program cabinet in accordance with this chapter.

[12] *See* KRS 164.001(12): "'Institution' means a university, college, community college, health technology center, vocational-technical school, technical institute, technical college, technology center, or the Kentucky Community and Technical College System." *See also* KRS 11.080: "As used in KRS 11.090 to 11.110, 'agency' includes any department, program cabinet, institution, board, commission, office or agency of the state."

example under either the "organizational unit" or "administrative body" definitions.[13]

Moore focused her motion for declaratory judgment on the premise that the University is not *in the executive branch of state government*, making the determination of whether the University is an "organizational unit," an "administrative body," or neither, a non-issue before the circuit court, assuming she prevailed. Similarly, the circuit court only declared that University of Kentucky is not in the executive branch for purposes of KRS 45.237 *et seq.* and KRS 12.010. The circuit court relied in part on the General Assembly's action in 1952 when it removed the University of Kentucky from the Department of Education and also this Court's recent decision in *Commonwealth ex rel. Beshear v. Commonwealth ex rel. Bevin*, 498 S.W.3d 355 (Ky. 2016) (*Beshear*). UK and the Department argue that the circuit court erred when it held that University of Kentucky is not within the scope of KRS 45.237 and KRS 45.238. Because UK's and the Department's arguments overlap to some extent, we will address them collectively.

In support of their position that the University is part of the executive branch, Appellants rely on multiple statutes and several cases. They cite KRS 49.070(1) (stating in part "state institutions of higher education under KRS Chapter 164 are agencies of the state"); *Withers v. University of Kentucky*, 939

---

[13] *Compare* KRS 49.070(1): "For purposes of KRS 49.060 [which waives the Commonwealth's sovereign immunity defense for negligence claims arising from its agent acting within the scope of his employment], state institutions of higher education under KRS Chapter 164 are agencies of the state."

11

S.W.2d 340, 343 (Ky. 1997), explaining that the University of Kentucky "operates under the direction and control of central state government;"[14] and KRS 164.225 (expressly stating that the University of Kentucky is "an independent agency and instrumentality of the Commonwealth"). They also cite *Beshear*, 498 S.W.3d at 380, for its reiteration that "universities are state agencies" and explanation that state universities are part of the executive branch, even though universities are somewhat different than program cabinets and boards directly under the Governor's control. Noting that the Kentucky Constitution requires the University of Kentucky to be within one of the three — and only three — branches of government, Appellants insist it can logically only be within the executive branch. As noted *supra*, Moore relies on the General Assembly's removal of the University from the Department of Education in 1952 as well as other statutes and portions of *Beshear*, 498

---

[14] As noted *supra*, KRS 49.070(1) states: "For purposes of KRS 49.060 [which waives the Commonwealth's sovereign immunity defense for negligence claims arising from its agent acting within the scope of his employment], state institutions of higher education under KRS Chapter 164 are agencies of the state." At the time *Withers*, 939 S.W.2d 340, was decided, KRS 49.070(1) was numbered KRS 44.073(1) and KRS 49.060 was numbered KRS 44.072. *Withers* stated:

> The language of KRS 44.073(1) establishes the University of Kentucky as an agency of the state and KRS 446.010(31) defines "state funds" or "public funds" in such a manner as to include sums paid to the University of Kentucky Medical Center for health care sciences.
> Numerous other statutes contained in KRS 164 establish unmistakably that the University of Kentucky operates under the direction and control of central state government and that it is funded from the State Treasury.

*Id.* at 343.

12

S.W.3d 355, to support her argument. After review, we conclude Appellants' position regarding UK's status within the executive branch is persuasive.

We begin with the Kentucky Constitution which established the three branches of government — legislative, executive, and judicial — with each branch (or department as the Constitution refers to them) being separate and having its own powers. Section 27. No person(s) of one department "shall exercise any power properly belonging to either of the others, except in the instances . . . expressly directed or permitted [by the Constitution]." Section 28. As this Court has held, there is no autonomous "fourth branch of government" under these constitutional provisions. *LRC v. Brown*, 664 S.W.2d 907, 917 (Ky. 1984) (Constitution recognizes only three branches and Legislative Research Commission resides in legislative branch, not outside it).

Moore asserts that the term "executive branch" is not used in the Kentucky Constitution and as used in KRS 45.237, and other statutes including the Executive Branch Code of Ethics, it has a statutory meaning that does not raise constitutional issues. She maintains that when one examines the term's statutory usage, it relates to the operational authority that the Governor or other elected official may exert over the agency or entity in question and that actual executive control by the Governor is the touchstone for an agency being deemed to be in the executive branch for purposes of KRS 45.237 *et seq.* However, a cardinal rule of statutory construction is "[a]ll words and phrases [in the statute] shall be construed according to the common and approved usage of language, but technical words and phrases, and such others

13

as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning." KRS 446.080(4). We do not find "executive branch" to be a technical word or phrase and therefore, construe it according to its common usage.

Moreover, we agree with Appellants that the University is principally a creature of the legislature, and must fall within one of the three recognized branches. *LRC*, 664 S.W.2d at 917. Moore's premise that the University may exist in some type of limbo or intermediate classification across the three branches finds no support in Kentucky law. Recognizing that the University must be categorized in one of the three branches, we consider Moore's argument that the General Assembly specifically removed public universities from the executive branch in 1952 when they were removed from the Department of Education.

Prior to its 1952 amendment, KRS 156.010(3) pertinently provided that the University of Kentucky and state teachers colleges,[15] with their governing boards, "are included in the Department of Education and constitute a division thereof, but each shall continue to exercise all the functions conferred upon it by law."[16] In 1952, the General Assembly

---

[15] Eastern Kentucky State Teachers College, Western Kentucky State Teachers College, Morehead State Teachers College, and Murray State Teachers College were the other named colleges.

[16] In contrast to the administrative independence conferred upon University of Kentucky and state colleges, KRS 156.010(2) provided that the "Department of Education shall exercise all administrative functions of the state in relation to the management and control of the public common schools, of vocational education and

14

removed the University of Kentucky and the state teachers colleges from the Department of Education, amending KRS 156.010(3) to reflect the removal and enacting KRS 164.285, which states:

> KRS 156.010 and 64.640 and any other statute, to the extent that they provide that the University of Kentucky, Eastern Kentucky State University, Western Kentucky State University, Murray State University, and Morehead State University shall be included in the Department of Education and constitute a division thereof, are hereby repealed.

Moore equates the University's removal from the Department of Education with removal from the entire organizational structure of the executive branch.

Moore additionally views KRS 164.225 and KRS 164.160 as support for her position, given the Governor's lack of organizational control over the University. KRS 164.225, entitled "Board's exclusive jurisdiction over appointments, qualifications, compensation, promotions, and retirement programs," also enacted in 1952, identified the University of Kentucky as "an independent agency and instrumentality of the Commonwealth."

> KRS 164.225 states in its entirety:
>
> Anything in any statutes of the Commonwealth to the contrary notwithstanding, the power over and control of appointments, qualifications, salaries, and compensation payable out of the State Treasury or otherwise, promotions and official relations of all employees of the University of Kentucky, as provided in KRS 164.220, and, subject to any restrictions imposed by general law, the retirement ages and benefits of such employees shall be under the exclusive jurisdiction of the board of trustees of the *University of Kentucky, which shall be an independent agency and*

---

rehabilitation, of the state institutions of higher education for Negroes, and of the Kentucky School for the Blind."

15

*instrumentality of the Commonwealth.* No relative of a board of trustee member shall be employed by the university.[17]

(Emphasis added.)

KRS 164.160 further provides that the board of trustees, vested with the government of the University in KRS 164.131,

> shall be a body corporate, under the name of board of trustees of the University of Kentucky, with the usual corporate powers, and shall possess all the immunities, rights, privileges and franchises usually attaching to the governing bodies of educational institutions. It may receive, hold and administer, on behalf of the university, subject to the conditions attached, all revenues accruing from endowments, appropriations, allotments, grants or bequests, and all types of property.

In *Beshear,* 498 S.W.3d at 380, we specifically stated that, "Universities are . . . not part of the executive branch in the same sense as the program cabinets and boards directly under the Governor's control." Moore construes *Beshear*'s holding that the Governor's authority over program cabinets differs fundamentally from his authority over the relatively independent boards of the state universities as further evidence that UK is not part of the executive branch.

Beginning with the language of KRS 164.225 and KRS 164.285, we reiterate that in interpreting a statute, "we must look first to the plain language of [the] statute and, if the language is clear, our inquiry ends." *Univ. of Louisville v. Rothstein,* 532 S.W.3d 644, 648 (Ky. 2017) (citation omitted). A

---

[17] The last quoted sentence of KRS 164.225 regarding relatives of trustees was added in 1992.

16

plain reading of these unambiguous statutes does not suggest that by removing the University from the Department of Education and stating the University is "an independent agency and instrumentality of the Commonwealth," the General Assembly completely removed the University from the executive branch of government. As discussed *supra*, the executive branch includes many organizational units, administrative boards, agencies, and other entities leaving a wide range of possibilities for categorizing the University outside the Department of Education but still within the executive branch.

Turning next to our 2016 decision in *Beshear*, that case addresses the Governor's authority to reduce state universities' budgetary allotments or otherwise direct them not to spend previously appropriated funds. 498 S.W.3d 355, 380–81. In *Beshear* we recognized that although the state universities are part of the executive branch hierarchy, they maintain statutorily recognized independence in many respects. Although the issue in *Beshear* was not whether the state universities are part of the executive branch, *Beshear*'s review of the characteristics of universities as compared to other executive branch entities is useful to an understanding of the executive branch organization scheme. We do not read *Beshear*, as Moore urges, to state that University of Kentucky is independent of the executive branch.

The *Beshear* Court responded to the question of whether the state universities are under the Governor's budgetary control as follows:

> Although the Universities are state agencies and are attached to the executive branch for budgetary purposes, they are not part of

the executive branch in the same sense as the program cabinets and boards directly under the Governor's control.

Unlike those cabinets and boards, the Universities' boards are separate "bod[ies] corporate, with the usual corporate powers." KRS 164.350; *see also* KRS 164.460 (same for the University of Kentucky); KRS 164.830(1) (same for the University of Louisville). They are expressly excluded from being part of the Department of Education. KRS 164.285. In some ways, they are akin to municipal or public corporations, having a separate existence from the main body of government, although retaining many of the government's characteristics, such as *immunity from suit.*

The Universities' boards have close to plenary power over the operation of their respective institutions. For example, they have exclusive control over appointments, qualifications, and salaries of faculty and employees. KRS 164.365(1); KRS 164.220 (UK); KRS 164.830 (U of L).

. . . .

There are, of course, some limits on how the boards operate. For example, certain expenditures must be approved by the Finance and Administration Cabinet or the Council on Postsecondary Education. *See* KRS 164A.575 (requiring cabinet approval for real property purchases); KRS 164.020(11)(a) (giving council power to approve certain capital construction projects). But that does not otherwise bring the financial decision-making— the choice whether to spend funds—back within the purview of the Governor.

The Governor also has some say with respect to the Universities' boards. For example, he gets to appoint most of the members of the boards. *See* KRS 164.131(1)(e) (UK); KRS 164.821(1) (U of L); KRS 164.321(1)(a) (other universities).[18] And he may remove members for cause. *See* KRS 63.080(2); KRS 164.131(1)(d) (UK); KRS 164.821(1)(b) (U of L); KRS 164.321(10) (other universities); KRS 164.325 (specifically applying 63.080(2) to boards of regents).[19]

---

[18] These three statutes have since been amended by 2017 Ky. Acts ch. 101 (Senate Bill 107) to add, pertinently, the qualification that "The members appointed by the Governor shall be subject to confirmation by the Senate."

[19] After a dispute arose as to the Governor's authority under KRS 12.028 to abolish and reorganize the board of a state university, the General Assembly passed

These provisions, however, do not undermine the university boards' fundamental independence. A large portion of this independence is financial self-control. The authority over the expenditure of funds appropriated to the Universities has been statutorily lodged with independent boards that head these institutions. Those boards may decline to spend funds appropriated to them, in which case the funds will lapse. But by giving that authority to the boards, the General Assembly has necessarily deprived the Governor of it. We thus conclude that the Governor cannot order the boards of the Universities not to spend funds appropriated to them.

The Governor's authority with respect to the boards differs fundamentally from his authority with respect to those state entities and employees that answer to him, such as the program cabinets and secretaries who head those cabinets. In this sense, the Universities are much more like private entities. And their authority over spending their money is largely independent of the executive branch.

498 S.W.3d at 380–81 (footnotes omitted).

Although Moore stresses the Governor's lack of actual operational control over the University, the fact that the University maintains a level of statutorily granted autonomy, which may not be enjoyed by other executive branch entities, does not exclude it from the executive branch. Indeed, *Beshear* does not hold otherwise.

In the case at bar, the circuit court simply declared that the University is not "in the executive branch of state government" for purposes of KRS 45.237 *et seq.* and went no further with its analysis. The circuit court erred in this

---

Senate Bill 107 in 2017. *See Bevin v. Beshear*, 526 S.W.3d 89 (Ky. 2017). KRS 63.080; 164.131; 164.821; and 164.321 were amended to reflect Senate Bill 107's provision of a specific statutory path for a governor to disband and reconstitute a university's governing board and the process for the removal of individual members of a university's governing board. *See id.* at 90. We find nothing in the amendments that would change our analysis in *Beshear*, 498 S.W.3d at 380–81.

conclusion. KRS 164.225 plainly provides that the University is "an independent agency and instrumentality of the Commonwealth," and this Court has held that it is attached to the executive branch. *Beshear*, 498 S.W.3d at 380.

Finally, even if a particular entity is within the executive branch, the General Assembly may condition application of other statutes to it based on the position the entity occupies within the executive branch. In short, the University of Kentucky may be included[20] or excluded from the definition of "agency" in regard to particular statutes, *i.e.*, being an agency for purposes of one statute but not necessarily others.[21] As to the statutes at hand, KRS 45.237 *et seq.*, we only declare that the University is in the executive branch of state government. On remand, the circuit court must determine whether UK is an executive branch entity entitled to refer debts to the Department of Revenue for collection pursuant to KRS 45.238.

## II. Sovereign Immunity Does Not Bar This Declaratory Judgment Action

We turn next to whether sovereign immunity bars Moore's declaratory judgment action, an argument rejected by the circuit court ten months before it decided the executive branch issue. As we observed in *Beshear v. Haydon Bridge Co.*, 416 S.W.3d 280, 286 (Ky. 2013) (*Haydon Bridge II*), "sovereign

---

[20] *See, e.g.*, KRS 49.070(1): "For purposes of KRS 49.060 [which waives the Commonwealth's sovereign immunity defense for negligence claims arising from its agent acting within the scope of his employment], state institutions of higher education under KRS Chapter 164 are agencies of the state."

[21] In other chapters of KRS beyond KRS 45.237 *et seq.*, agency is defined differently. *See* KRS 11.080 referenced *supra* in n.12.

immunity is a common law doctrine, a 'bedrock component' of American government, which prohibits claims 'against the government treasury absent the consent of the sovereign.'" (Citations omitted.) The circuit court correctly discerned that it does not bar this declaratory judgment action.

The Declaratory Judgment Act is contained in KRS Chapter 418. Pertinently, KRS 418.040 states:

> In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

KRS 418.045 provides examples of when a declaratory judgment may be requested and specifically recognizes that a declaratory judgment may be granted when a person's rights are affected by a statute or other government regulation.

After the court has issued a declaration of rights by judgment, order or decree, further relief based upon that declaration may be granted whenever necessary or proper. KRS 418.055. That relief may be requested in the same proceeding wherein the declaration issued or it may be sought by petition in an independent action. *Id.* Under the Declaratory Judgment Act, specifically KRS 418.055, declaratory relief may be available even though an injunction may not. *See, e.g., Beshear v. Haydon Bridge Co., Inc.,* 304 S.W.3d 682 (Ky. 2010) (*Haydon Bridge I*); *Haydon Bridge II,* 416 S.W.3d 280.

21

Recognizing that UK has sovereign immunity for certain claims under *Withers*, 939 S.W.2d at 342-43, and its progeny, the circuit court relied primarily on *Commonwealth v. Kentucky Retirement Systems*, 396 S.W.3d 833 (Ky. 2013), in concluding that it had authority to declare the rights of the parties in this case, particularly whether UK Healthcare is within the executive branch for purposes of KRS 45.237 *et seq.*, an issue of law. In *Retirement Systems*, this Court held that sovereign immunity did not bar a plaintiff from seeking a declaration of rights under the Declaratory Judgment Act against the Commonwealth. *Id.* at 835. The plaintiffs in that case were a group of county employees seeking a declaration that a particular statute affecting their retirement benefits was unconstitutional. *Id.* at 833.

Both UK and the Department maintain that a declaratory judgment against them in the context of this case is barred by sovereign immunity.[22] "Sovereign immunity is founded on the notion that the resources of the state, its income and property, cannot be compelled as recompense for state action that harms a plaintiff through the ordinary suit-at-law process." *Retirement Systems*, 396 S.W.3d at 836; *accord Haydon Bridge II*, 416 S.W.3d at 286–87. Immunity from suits seeking monetary damages exists for the state and its agencies except where it has been explicitly waived by the legislature. *See Furtula*, 438 S.W.3d at 305; *Withers*, 939 S.W.2d at 346 (quoting *Edelman v.*

---

[22] UK can only have governmental immunity. *Furtula v. Univ. of Kentucky*, 438 S.W.3d 303, 306 n.1 (Ky. 2014). Because no issue is presented as to the specific type of immunity UK enjoys, and caselaw frequently uses the term "sovereign immunity" when discussing the immunity of state agencies, *id.* (citations omitted), we maintain UK's sovereign immunity terminology.

*Jordan*, 415 U.S. 651, 673 (1974)). UK and the Department posit that, if successful, Moore will be using the requested declaratory judgment to recover money, in the form of a refund, from UK and the State Treasury, and as a consequence, sovereign immunity bars her claim.

In *Haydon Bridge II*, 416 S.W.3d at 293-94,[23] this Court recognized the declaratory and injunctive[24] relief exceptions to sovereign immunity. UK, however, insists that this Court has not defined the precise parameters of the declaratory and injunctive relief exceptions and suggests that we follow the federal courts by imposing limitations on the *Ex Parte Young*, 209 U.S. 123 (1908), doctrine allowing prospective injunctive relief. As we stated in *Haydon Bridge II*,

> [p]ursuant to the *Young* exception, a federal court may grant prospective injunctive relief against a state officer to compel compliance with federal law, whether constitutional or statutory. However, the exception is not applicable to an action directly against the state or state agency, only against a state officer, and it cannot be used to compel a state officer to comply with state law.

416 S.W.3d at 289 (citations omitted).

---

[23] The *Haydon Bridge* plaintiffs sought both declaratory and injunctive relief in their original, first amended, and second amended petitions, 416 S.W.3d at 284-85, and again characterized the relief sought in the third amended complaint as declaratory and injunctive, *id.* at 286. A review of *Haydon Bridge I* and *Haydon Bridge II* reveals that the plaintiffs' request for declaratory relief was the primary issue in *Haydon Bridge I*, and their request for injunctive relief sought in the third amended complaint filed after *Haydon Bridge I* was decided, was the primary issue in *Haydon Bridge II*. *Haydon Bridge II* held that the prospective injunctive relief was proper, but the retrospective injunctive relief, return of transferred funds, was not.

[24] To the extent UK suggests that Moore is currently pursuing injunctive relief, we do not agree. Moore only seeks a declaration of rights. The Department's brief indicates it voluntarily suspended collection activities after Moore filed the instant action.

UK cites *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002), *Green v. Mansour*, 474 U.S. 64, 73 (1985), and *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 74 (1996), respectively, to persuade this Court that "the declaratory and injunctive relief exception" 1) should be limited to situations when someone "alleges an ongoing violation of . . . law and seeks relief properly characterized as prospective"; 2) does not apply when the plaintiff may use a declaratory judgment to obtain a monetary judgment against the state treasury in another proceeding; and 3) does not apply if there is another administrative or judicial process for obtaining similar relief. Citing *Green*, the Department also contends that Moore cannot obtain a declaratory judgment in this action and use the judgment in a separate suit for monetary damages against the Department and UK, the rule being that a declaratory judgment action that will be used to establish liability for monetary relief against the state is barred by sovereign immunity.

Although UK and the Department view this case as an opportunity for this Court to obtain guidance from federal law, especially as to foreclosure of both declaratory and injunctive relief when a declaration may be used to obtain monetary relief from the state treasury, the Commonwealth's declaratory judgment statutes, referenced in pertinent part *supra*, are unambiguous that declaratory relief is not predicated on whether associated future consequential relief may be requested. Furthermore, the Commonwealth's existing jurisprudence contains the guidance necessary to address whether sovereign immunity bars Moore's claim for a declaratory judgment, the only claim within

24

her amended complaint ruled on by the circuit court. As to the availability of injunctive relief, "[u]nless and until some demand is made, there is no justiciable issue before the Court for determination. The Court will not render advisory opinions or consider matters which may or may not occur in the future." *Nordike v. Nordike*, 231 S.W.3d 733, 739 (Ky. 2007) (citations, quotation marks, and modifications omitted). We turn to the question of whether sovereign immunity bars the circuit court from issuing a declaratory judgment in this action.

In *Retirement Systems*, members of the County Employee Retirement System, administered by the Kentucky Retirement Systems, filed an action seeking a declaration that KRS 61.637(1), a statute regarding a retired employee's right to receive retirement benefits upon reemployment by the public employer, is unconstitutional.[25] 396 S.W.3d at 835. The Commonwealth moved for dismissal on the basis of sovereign immunity, asserting its immunity is not waived in declaratory judgment actions, but the trial court denied that motion. *Id.* at 836. On interlocutory appeal,[26] this Court agreed with the trial court that a declaratory judgment action is not a claim for damages, but rather a request that the plaintiff's rights under the law be declared. *Id.* at 838.

---

[25] The original complaint also sought injunctive relief but that request was later "dropped." 396 S.W.3d at 836.

[26] Pursuant to *Breathitt County Board of Education v. Prater*, 292 S.W.3d 883 (Ky. 2009), the Commonwealth was entitled to an immediate appeal of the denial of its sovereign immunity claim.

25

"[A declaratory judgment action] is qualitatively different from [an action] requiring the state to pay out the people's resources as damages for state injury to a plaintiff." *Id.* at 839. "There is no harm to state resources from a declaratory judgment. When the state is a real party in interest, the state is merely taking a position on what a plaintiff's rights are in the underlying controversy." *Id.* at 838. "When statutory . . . rights are adjudicated, the state is inevitably affected in some manner. There simply can be no sovereign immunity when [a court is asked to declare someone's rights under a statute]. The state is not above its own . . . laws." *Id.* at 840.

*Retirement Systems* makes clear that the state is not sovereignly immune from a declaratory judgment action. Consequently, the circuit court acted within its jurisdiction when it entered declaratory judgment regarding UK's status *vis-à-vis* the executive branch of state government. As to UK's and the Department's unripe argument that sovereign immunity bars monetary injunctive relief flowing from a declaratory judgment, "it is also true that in subsequent . . . actions to enforce declared rights, the immunity issue could be relevant if the revenue or property of the state would be affected." *Id.*; *see Haydon Bridge II*, 416 S.W.3d 280. At this juncture, UK's status as an agency for purposes of KRS 45.237 *et seq.* and other issues that would necessarily be addressed preliminary to any monetary relief remain undecided.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court's decision that sovereign immunity does not bar this declaratory action against the University

26

of Kentucky, but reverse the circuit court's decision that the University of Kentucky is not within "the executive branch of state government" for purposes of KRS 45.237 *et seq.* Accordingly, we remand this case for further proceedings consistent with this Opinion.

All sitting. All concur.

COUNSEL FOR UNIVERSITY OF KENTUCKY,
A/K/A UK HEALTHCARE; AND MARK F.
NEWMAN, IN HIS OFFICIAL
CAPACITY AS EXECUTIVE VICE
PRESIDENT FOR HEALTH AFFAIRS,
UNIVERSITY OF KENTUCKY:

Kevin G. Henry
Bryan Howard Beauman
Joshua Michael Salsburey
Sturgill, Turner, Barker & Moloney PLLC

William Thro
Office of Legal Counsel
University of Kentucky

COUNSEL FOR COMMONWEALTH OF
KENTUCKY, DEPARTMENT OF REVENUE;
AND DANIEL P. BORK, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF THE
KENTUCKY DEPARTMENT OF REVENUE:

Mark Stephen Pitt
Stephen Chad Meredith
Matthew Kuhn
Office of the Governor

Frank L. Dempsey
Frankfort, Kentucky

Raymond Campbell Connell
Department of Revenue


COUNSEL FOR SARAH R. MOORE:

William L. Davis
Lexington, Kentucky

E. Douglas Richards
E. Douglas Richards, PSC

COUNSEL FOR COMMONWEALTH
OF KENTUCKY, DEPARTMENT OF
REVENUE; AND DANIEL P. BORK,
COMMISSIONER, KENTUCKY
DEPARTMENT OF REVENUE:

Mark Stephen Pitt
Stephen Chad Meredith
Matthew Kuhn
Office of the Governor

Frank L. Dempsey
Frankfort, Kentucky

Raymond Campbell Connell
Department of Revenue

COUNSEL FOR AMICUS CURIAE:

MOREHEAD STATE UNIVERSITY:

Freddi J. Vescio Fitzpatrick
General Counsel

KENTUCKY EQUAL JUSTICE CENTER:

Benjamin Carter
Ben Carter Law, PLLC

KENTUCKY JUSTICE ASSOCIATION:

Kevin Crosby Burke
Jamie Kristin Neal
Burke Neal PLLC

KENTUCKY COMMUNITY AND TECHNICAL
COLLEGE SYSTEM (KCTCS); WESTERN KENTUCKY
UNIVERSITY; EASTERN KENTUCKY UNIVERSITY;
MOREHEAD STATE UNIVERSITY; MURRAY STATE
UNIVERSITY; AND NORTHERN KENTUCKY
UNIVERSITY:

Brent Robert Baughman
Melissa Norman Bork
Kyle William Miller
Bingham Greenebaum Doll, LLP

APPALRED LEGAL AID:

Evan Barret Smith
Appalred Legal Aid

LEGAL AID OF THE BLUEGRASS:

Joshua Bryan Crabtree
Karen Hoskins Ginn
Legal Aid of the Bluegrass

KENTUCKY LEGAL AID:

Amanda Anderson Young
Kentucky Legal Aid

LEGAL AID SOCIETY OF LOUISVILLE:

Neva-Marie Polley Scott
Legal-Aid Society of Louisville